**UNITED STATES of America**

v.

**William A. MOORE, James A. Carrington, and Joseph F. Donahue, Defendants.**

**No. 89–CR–186.**

United States District Court, N.D. New York.

July 11, 1990.

Frederick J. Scullin, Jr., U.S. Atty., N.D. N.Y., Albany, N.Y., for U.S.; Bernard J. Malone, Barbara D. Cottrell, Asst. U.S. Attys., of counsel.

Gleason, Dunn, Walsh & O'Shea, Albany, N.Y., for defendant Donahue; Meave M. Tooher, of counsel.

Terence L. Kindlon, P.C., Albany, N.Y., for defendant Moore; Laurie Shanks, of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, District Judge.

On February 10, 1990 Judge Thomas J. McAvoy signed an Order granting defendant Joseph Donahue's request for a hearing to test the veracity of a search warrant application as permitted by *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Pursuant to Judge McAvoy's Order the matter was transferred to this court for a hearing. The court conducted a *Franks*/suppression hearing on February 21, 1990 in Utica, New York and on February 27, 1990 in Albany, New York. After the government filed a letter brief addressing the issues raised at the suppression hearing, defendant Donahue requested that transcripts of the proceedings be prepared. The court acceded to the defendant's request. Transcripts of the proceedings were prepared. Defendant Donahue has submitted his letter brief which the court received on June 11, 1990.

## BACKGROUND

The three defendants in this case are presently named in a superceding indictment (89–CR–186) which contains four counts. The first count alleges that between November 1, 1987 and June 30, 1989 all three defendants conspired to possess and to distribute in excess of 100 kilograms of marijuana. In the second count defendant James Carrington is charged with possessing marijuana on June 8, 1989 with the intent to distribute it. The third count levels the same charge against defendant Donahue. The fourth and final count asserts that Carrington possessed marijuana with the intent to distribute it on June 13, 1989.

During the hearing before this court the government and the defendant elicited testimony in order to explain a search and subsequent seizure by police officers which occurred at defendant Donahue's residence on June 8, 1989. There is little dispute as to the relevant facts which culminated in the search and seizure at Donahue's residence.

In the early evening of June 7, 1989 Sergeant Robert Kroll of the East Greenbush Police Department ("East Greenbush PD") received a phone call from a police officer in El Paso, Texas. The El Paso police officer, Paul Irwin, informed Kroll that one of their narcotics dogs had "hit

on" two packages [1] which were being sent via United Parcel Service ("UPS") to Rensselaer, New York, which is located within the Town of East Greenbush. The addressee on the boxes was defendant Donahue and the address for delivery was his: 100 Orchard St., Apt. C1, Rensselaer, New York.

Soon after Kroll spoke with Irwin, Detective Timothy Murphy arrived at the East Greenbush Police Department to attend a Common Council meeting upstairs. Although he resides in East Greenbush, Murphy is a member of the Albany Police Department ("Albany PD"). In that police department Murphy is assigned to the Special Investigations Unit, a unit which investigates narcotics trafficking. He has been employed in that capacity for 12 years.

Before proceeding upstairs Murphy happened upon Kroll who recounted for Murphy the substance of the phone conversation he had with Irwin. Apparently Murphy did not attend the meeting upstairs. Instead he conferred with Kroll regarding obtaining a search warrant to seize the two packages. Based upon the information Kroll had conveyed regarding his discussion with the El Paso officer, Murphy on a yellow legal pad drafted his suggestion for a search warrant application. Kroll eventually typed out Murphy's suggestion into a search warrant application.

In addition to his suggestion for a search warrant application, Murphy arranged for two Albany PD narcotics dogs and their handlers to meet Kroll the next morning at the UPS faculty in Latham, New York. Present in Latham at 8:00 a.m. on the 8th of June were Murphy, Detective Sergeant Carcione of the Albany PD, Detective Rena Epting of the Albany PD, Detective Thomas Blair of the Albany PD, Sergeant Kroll, Officer Michael Davidson of the East Greenbush PD and two narcotics dogs. At the Latham facility the narcotics dogs "hit on" both of the suspect packages. With

this information in hand, Epting obtained from Albany City Judge E. David Duncan a search warrant to open the packages.[2]

Both suspicious packages had similar appearances from the outside. They were secured with metal banding. Pursuant to the warrant obtained from Judge Duncan, the officers opened one of the two packages. Inside that package the police officers found two igloo coolers. The lids on the coolers had been sealed shut with a heavy epoxy resin. The officers opened one cooler. Within that cooler they found a heavy plastic bag filled with a talcum-like powder. In the talcum powder the officers located tar-coated, cellophane-wrapped bricks. Kroll, Blair and Murphy testified that these were brick-form marijuana.

The package which was opened was resealed complete with new metal bands. Upon resealing the package the officers formulated a plan, the object of which was to arrest defendant Donahue once he accepted delivery of the packages. They decided to make a controlled delivery of the packages. The plan was that Blair would don a UPS uniform and along with a UPS security guard would make the delivery to Donahue's apartment at 100 Orchard Street. At the UPS facility, Murphy penned a handwritten addendum to the warrant application.

Kroll and Davidson then drove to the Empire State Plaza, the place of employment of Charles Assini, Town Justice for the Town of East Greenbush. Kroll apparently signed the application in the car [3] and then waited in the car while Davidson presented the search warrant application to Judge Assini. In brief, the application sought to search the person of the defendant, his apartment, as well as any storage areas over which the defendant maintained either custody or control. The warrant application described the objects of the search to be the two boxes from El Paso as well as "any and all records or documents relat-

---

1. Narcotics dogs "hit on" packages or "alert" when, by scratching or barking, they indicate that they smell narcotics.

2. The defendant does not challenge the validity of the warrant obtained from Judge Duncan.

3. Next to Kroll's signature are the words: "Subscribed and Sworn to before me this 8[th] day of June, 1989." The signature line under these words contains no signature.

ed to this scheme." Exhibit ("Exh.") 2. As factual support for the warrant, the application set forth the conversation with the officer from El Paso, Irwin. It described the packages[4] and further stated that the packages were to arrive at the UPS Latham facility at 8:00 a.m. on June 8, 1989. The application additionally set forth that Kroll knew the defendant "professionally" for better than 15 years, that Kroll had seen Donahue arriving and leaving from 100 Orchard Street and that the telephone company indicated that Donahue had purchased phone service for 100 Orchard Street. Finally, the warrant application contained a handwritten supplement, penned by Murphy. This supplement was the focus of much of the hearing testimony. The court will set forth the supplement in its entirety:

> On 8 June 1989 Det. Epting of the Albany Police dept S.I.U. along with his/her K–9 partner (Boa or ["Rufus" crossed out]) conducted a certified inspection resulting in a positive affirmation. A search warrant was obtained and the contents of the packages were inspected.
>
> *Contents Listed As Follows:*
>
> > Blue Thermos Brand Cooler Containing a Number of Full & ½ Bricks of marijuana. See attached Polaroid Photo
>
> Packages subsequently resealed; while in police custody, and shipped to Jos. Donahue (this application) who accepted same. Packages from time of inspection to acceptance by Donahue were continuously and constantly in Police Custody.

Exh. 2. Kroll, Davidson and Judge Assini all agree that the last paragraph of the handwritten supplement, insofar as it indicated that the packages had been delivered to and accepted by Donahue, was untrue. Murphy was harder to pin down. He did acknowledge that, previous to the application submitted to Judge Assini, he had never drafted an anticipatory warrant application.

Davidson located Judge Assini in his office. Judge Assini had been told by Kroll in a telephone conversation that the progress of the packages had been monitored by law enforcement officials ever since the packages had come under police scrutiny in El Paso, Texas. Davidson presented the application to Judge Assini who reviewed it and posed some questions to Davidson. In response to the questions Davidson informed Judge Assini that the delivery was about to be made and that the officers wished to obtain the warrant as soon as possible so that they could serve the warrant as soon as the packages were delivered.

Judge Assini signed the warrant which permitted the police to search Donahue's apartment and storage areas for the packages and records or documents related to "this scheme." Davidson and Kroll returned to Rensselaer with the signed warrant. Soon after their return, Blair, who was wearing a UPS uniform, and the UPS employee drove a UPS vehicle to 100 Orchard Street. The two men attempted to deliver the packages to Donahue's apartment. No one responded to the knock on the apartment door. The landlord offered to accept the packages, but Blair declined his offer. Before leaving, Blair and the UPS employee left a UPS sticker on the door to Donahue's apartment.[5] That sticker stated that a delivery had been attempted and that the packages had been returned to the UPS facility in Latham.

Soon thereafter, around lunch-time, Blair and the UPS employee returned to the UPS facility in Latham. An individual, whom

---

**4.** The description of the boxes included the weight of the packages, 36 and 55 pounds, and the delivery address.

**5.** Defendant objects to this finding, noting that Blair never testified that a sticker was left on the door. However, while Blair did not testify to this fact, Kroll did. Transcript of 2/21/90 at 34. In a suppression hearing evidentiary standards are more relaxed than in trials. *United States v. Matlock,* 415 U.S. 164, 175, 94 S.Ct. 988,

995, 39 L.Ed.2d 242 (1974). It is likely that Kroll determined from a third party, e.g., Blair, that the sticker was placed on the door. There is nothing in the hearing record which raises serious doubts that the sticker was left on the door. In fact, the police stake-out at the Latham facility was premised upon leaving a sticker on the door to Donahue's apartment. *See infra* at 8.

the police later identified as Scott Rehm, arrived at the facility and claimed to be the defendant. Rehm signed for the packages. Blair assisted Rehm by taking the packages to Rehm's car. As he was doing that, Blair noted the make, model and license number of the car. Rehm refused Blair's offer to assist loading the packages into the trunk of the car.

In the meantime, Kroll, Murphy and Davidson had returned to the terminal at approximately the same time as the packages. Kroll, along with the rest of the officers, planned to set up a stakeout at the UPS facility. News came to Kroll over his car radio that Donahue had picked up the two packages. However, when Blair broadcast the description of "Donahue" over the radio, Kroll responded immediately that the individual who received the packages was definitely not Donahue.

Rehm arrived so soon after the failed delivery attempt that the police had not yet set up their stake out. Kroll, however, was in position and followed Rehm on Route 7 and onto Interstate 87, the Northway, heading south. Kroll described the next sequence of events as follows:

> There came a time when we were going down the Northway that [Rehm's] car just took off and I chased the car for a while trying to keep up with it. Traffic was extremely heavy. We got down to a construction area and the driver of the car, he just—we were going over construction cones and through the construction ... [at u]p to 90 miles per hour, at which time he pulled in front of a tractor trailer and I lost him[.] I got hung up in the traffic in the construction, and that was that.

Transcript of 2/21/90 at 36. The police never saw the packages after they were loaded into Rehm's car. Some members of the East Greenbush PD kept Donahue's residence under surveillance after the failed delivery attempt. That surveillance was not wholly effective because the East Greenbush PD did not have the manpower to watch every door which led to Donahue's apartment.

At approximately 5:30 p.m. on June 8, Kroll and other officers executed the warrant which Judge Assini had signed. Kroll entered the apartment through a window. He and the other officers found Donahue in the apartment. The officers seized coolers similar to the ones found inside the package which had been opened in Latham. Epoxy-like sealant, similar to that encountered on the cooler opened in Latham, was present on the rims of the seized coolers. The police also seized records, drugs and drug paraphernalia.

At sometime between 5 and 6 p.m. Davidson located Rehm's car in a driveway in East Greenbush. Davidson found Rehm without the packages and questioned Rehm. Davidson notified Kroll over the radio that he (Davidson) had found Rehm and Rehm's car. Kroll acknowledged the report over another mobile radio. As noted above, Kroll claims he was in Donahue's apartment at the time Davidson reported finding Rehm's car. Although it would be interesting to know whether Kroll knew that Rehm had been apprehended prior to the search, the court will not make such a determination on the record before it. In any event, the question of which occurred first, the search or the locating of Rehm's car, need not be resolved in order to decide the motion to suppress.

## DISCUSSION

The court must first determine whether the warrant and search and seizure pass muster under fourth amendment standards. If there is a fourth amendment violation, the court must then decide whether the good-faith exception to the exclusionary rule applies.

### I.

The fourth amendment to the United States Constitution states: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or

things to be seized." Out of this amendment arose the so-called exclusionary rule. Three quarters of a century ago, the United States Supreme Court reasoned that "[t]he efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land." *Weeks v. United States,* 232 U.S. 383, 393, 34 S.Ct. 341, 344, 58 L.Ed. 652 (1914). More recently, the Court in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) has stated that "the exclusionary rule is designed to deter police misconduct." *Id.* at 916, 104 S.Ct. at 3417. The Court has extended the exclusionary rule to cover evidence which the government seeks to introduce at a federal criminal trial even though that evidence was seized by *state* officers in violation of the principles embodied in the fourth amendment. *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). In keeping with the rule enunciated in *Elkins,* the Second Circuit has concluded that federal law applies to federal criminal prosecutions, "even though the underlying investigation leading to prosecution was conducted solely by state officials." *United States v. Pforzheimer,* 826 F.2d 200, 204 (2d Cir.1987); *see Elkins,* 364 U.S. at 224, 80 S.Ct. at 1447–48; *Preston v. United States,* 376 U.S. 364, 366, 84 S.Ct. 881, 882–83, 11 L.Ed.2d 777 (1964).

■ There is no doubt but that the search and seizure challenged in this case were based upon the issuance of a warrant.

Where a warrant has issued, the defendant has the burden of making a substantial preliminary showing that information in the supporting affidavit is tainted. Such a showing entitles him to a hearing, at which he has the burden of establishing by a preponderance of the evidence the fact of taint.

*United States v. Taborda,* 635 F.2d 131, 140 n. 13 (2d Cir.1980) (citations omitted). Judge McAvoy, in granting the motion for a hearing, has already determined that the defendant had met his initial burden of preliminarily showing that the warrant application was tainted. Even so, the defendant still must demonstrate by a preponderance of the evidence that the application was in fact tainted and that the warrant was improperly issued and/or executed. 4 W. LaFave, *Search and Seizure* § 11.2(b), at 218 (1987) ("LaFave"); *United States v. Arboleda,* 633 F.2d 985, 993 (2d Cir.1980) (Oakes, J., dissenting), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1362, 67 L.Ed.2d 343 (1981).

Both parties in their discussion of the propriety of this warrant have focused on the anticipatory nature of the warrant. Although the warrant is anticipatory, it is, as will be developed, partially non-anticipatory. The court will first address the anticipatory portion of the warrant in conjunction with the general requirement that a warrant be issued upon oath or affirmation. Second, in addressing fourth amendment criteria the court will address whether there was probable cause to issue the non-anticipatory aspect of the warrant.

■ The Second Circuit has recently upheld the constitutionality of anticipatory warrants. *United States v. Garcia,* 882 F.2d 699, 702 (2d Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 348, 107 L.Ed.2d 336 (1990). Anticipatory warrants are warrants which are issued "before the necessary events have occurred which will allow a constitutional search of the premises." *Id.* at 702. Accordingly, the warrant was anticipatory insofar as it sought to recover the two packages which were to be delivered to the defendant's residence. However, insofar the warrant sought records or documents related to the delivery of the two packages it was not contingent upon the delivery of the packages and was therefore, in that aspect, non-anticipatory.

■ With respect to the anticipatory aspect of the warrant, "the fact that the contraband is not 'presently located at the place described in the warrant' is immaterial, so long as 'there is probable cause to believe that it will be there when the search warrant is executed.'" *Id.* (citations omitted). Indeed, the court in *Garcia*

noted that even a non-anticipatory warrant is to some extent anticipatory because "a warrant based on a known presence of contraband at the premises rests also on the expectation that the contraband will remain there until the warrant is executed." *Id.* (citation omitted).

■ Nonetheless, police authorities may not "use without limitations" warrants where the sought after contraband is not located at the place described in the warrant, but is expected to arrive after the warrant is obtained. *Id.* at 703. Consequently, affidavits supporting anticipatory warrants must show (1) that the government agent believes a delivery of contraband is going to occur, (2) how the agent has obtained the belief, (3) how reliable his sources are, *and* (4) what part government agents will play in the delivery. *Id.* Magistrates and judges are to "take care to require independent evidence giving rise to probable cause that the contraband will be located at the premises at the time of the search." *Id.* To guard against premature execution of an anticipatory warrant a magistrate should "list[ ] ... in the warrant conditions governing the execution which are explicit, clear, and narrowly drawn so as to avoid misunderstanding or manipulation by government agents." *Id.* at 703–04. The fourth amendment's admonishment that a warrant "particularly describ[e] the place to be searched and the persons or things to be seized" is to be given especial attention in the instance of an anticipatory warrant. *Id.* at 704. The magistrate's task also includes "limit[ing] the scope of the warrant-authorized search to items which law enforcement officers have probable cause to believe are located on the premises." *Id.* The Second Circuit has expressly stated that "if [the events which are necessary to a constitutional search] do not transpire, the warrant is void." *Id.* at 702.

■ With respect to all warrants, anticipatory or not, "[i]t is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention." *Aguilar v. Texas,* 378 U.S. 108, 109

n. 1, 84 S.Ct. 1509, 1511 n. 1, 12 L.Ed.2d 723 (1964) (emphasis in original). Even so, to determine whether a particular warrant was supported by probable cause this court should disregard allegations in the warrant application which are tainted because they were either knowingly false or asserted with reckless disregard for the truth. *Franks v. Delaware,* 438 U.S. 154, 155–56, 171–72, 98 S.Ct. 2674, 2676–77, 2684–85, 57 L.Ed.2d 667 (1978); *United States v. United States Currency in the Amount of $228,536.00,* 895 F.2d 908, 919 (2d Cir.1990); *United States v. Levasseur,* 816 F.2d 37, 43 (2d Cir.1987). In addition, the court, as it reviews whether the warrant was issued upon probable cause may not consider unsworn supplements to the warrant application. *Tabasko v. Barton,* 472 F.2d 871 (6th Cir.1972), *cert. denied,* 412 U.S. 908, 93 S.Ct. 2288, 36 L.Ed.2d 974 (1973); *Frazier v. Roberts,* 441 F.2d 1224 (8th Cir.1971). One reason for this latter concern is the oath and affirmation clause of the fourth amendment. The Second Circuit has further explained the oath and affirmation requirement. "The theory is that those who have been impressed with the moral, religious or legal significance of formally undertaking to tell the truth are more likely to do so than those who have not made such an undertaking or been so impressed." *United States v. Turner,* 558 F.2d 46, 50 (2d Cir.1977) (citing *Frazier,* 441 F.2d at 1228).

■ Based upon the court's review of the facts and the warrant application, the court is compelled to find that the entire anticipatory aspect of the warrant violates the fourth amendment. First, the handwritten addendum insofar as it indicated that the packages had been delivered and accepted by Donahue was false. This portion of the warrant application may not be considered in determining whether the warrant was adequately based upon probable cause. *Levasseur,* 816 F.2d at 43. Second, there was no testimony that Davidson took an oath or affirmation either before or after he explained to Judge Assini that the officers expected to execute a controlled delivery of the packages to Apartment C–1.

It was the government's burden to demonstrate that Davidson's statements were given under oath. 2 LaFave § 4.3, at 181. Since the government produced no evidence in this regard, the court holds that Judge Assini's reliance on these statements by Davidson contravenes the fourth amendment.

Absent Davidson's explanatory remarks Judge Assini could not know how the officers believed that the packages were going to be delivered. There was no indication in the warrant application that the packages were "on a sure course of delivery." *United States v. Hale,* 784 F.2d 1465, 1468 (9th Cir.) (reviewing the propriety of an anticipatory warrant), *cert. denied,* 479 U.S. 829, 107 S.Ct. 110, 93 L.Ed.2d 59 (1986); *see United States v. Goodwin,* 854 F.2d 33, 36 (4th Cir.1988) (upholding an anticipatory warrant where the applying affiant "explained that he would cause the materials to be delivered via the mails"). These shortcomings contravened the requirement that affidavits in support of anticipatory warrants set forth how the affiant believes that a delivery of contraband will occur and what part government agents will play in the delivery. *Garcia,* 882 F.2d at 703.

The most glaring omission of all—a point not addressed by either party—is that the jurat, the certification next to Kroll's signature, was never signed by Judge Assini. *See supra* note 3. In fact, Kroll never left the car to present to Judge Assini the warrant application which Kroll had signed. Even though the warrant could be valid absent Judge Assini's signature on the jurat, *see Turner,* 558 F.2d at 49–53 (warrant upheld where judge placed customs agent under oath over the telephone and where the agent affixed the judge's signature to the warrant), there simply is no indication before the court in this case that any portion of the warrant application was presented upon oath or affirmation as required by the fourth amendment. *See Nathanson v. United States,* 290 U.S. 41, 47, 54 S.Ct. 11, 13, 78 L.Ed. 159 (1933). On this ground, both the anticipatory and non-anticipatory aspects of the warrant contravene fourth amendment principles.

In order to further review the challenged search and seizure the court will put aside the issue of the unsigned jurat and will additionally assume that Davidson's oral explanation before Judge Assini of the planned delivery was given under oath. Even if these conditions had been met the execution of the anticipatory part of the warrant would have failed to pass constitutional muster. The officers never observed the delivery of the packages to Donahue's residence. Because the anticipatory part was premised upon the delivery and because the delivery did not occur, that portion of the warrant was void. *Garcia,* 882 F.2d at 702; *see United States v. Dornhofer,* 859 F.2d 1195 (4th Cir.1988) (upholding an anticipatory warrant were government agents observed the defendant remove the subject material from his mail box), *cert. denied,* —— U.S. ——, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989); *Goodwin,* 854 F.2d at 35–36 (same); *Hale,* 784 F.2d at 1468 (same).

The government nonetheless argues that, even though the police officers never witnessed the delivery of the packages to Apartment C–1, the officers "had no reason to believe at that time that the packages would be taken to a location other than 100 Orchard Street." Government's Letter Brief, Docket Number ("Doc.") 57, at 4. This argument carries little weight for two reasons. The government's position is contrary to the Second Circuit's admonition that an anticipatory warrant is void once the events contemplated in the warrant application do not occur. Additionally, the police did indeed have reason to believe that the packages would not be and had not been taken to 100 Orchard Street. Although their surveillance of Apartment C–1 was not foolproof during the afternoon of June 8, the officers during that surveillance had not seen the packages delivered to 100 Orchard Street. Further, the high speed chase on the Northway raised the specter that Rehm or someone else would not take the packages to Donahue's address. Because of the chase, Rehm had reason to suspect that the police knew that he had picked up Donahue's packages and

**736**

that they knew the delivery address as well as the contents of the packages.

■ Finally, the court holds that, prior to executing the warrant upon an anticipatory rationale, the officers had a duty to report back to Judge Assini after Kroll lost sight of Rehm's car on the Northway. "The duty to report new or correcting information to the magistrate does not arise unless the information is material to the magistrate's determination of probable cause." *United States v. Marin–Buitrago,* 734 F.2d 889, 894 (2d Cir.1984). "Facts omitted from a warrant affidavit are not material unless they cast doubt on the existence of probable cause." *Id.* at 895.

■ To determine whether the officers' failure to report back on facts known after the Northway chase cast doubt on the existence of probable cause insofar as the warrant rested upon an anticipatory rationale, the court will first review the structure of probable cause. "To establish probable cause to search a residence, two factual showings are necessary—first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence." *United States v. Travisano,* 724 F.2d 341, 345 (2d Cir.1983) (citing *United States v. Harris,* 403 U.S. 573, 584, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723 (1971)). Here, there is little doubt that a crime was committed. The question presently at issue is whether, once Kroll lost sight of Rehm's car on the Northway, there was probable cause to believe that the packages, the evidence, were located at the defendant's residence. For reasons already articulated, the court holds that anticipated probable cause vanished with the car. Anticipated probable cause in the warrant was premised on the eventuality that the packages were going to be delivered to Donahue at his residence. Without the delivery, there

was no probable cause to search for the packages.[6]

Judge Assini nonetheless contended in his testimony before this court that the warrant was valid even if the planned delivery did not occur. His argument in response to questioning by the court focused on the non-anticipatory portion of the warrant. Judge Assini's theory was that, even without the delivery, probable cause still existed to search for and seize "other records or schemes relating to this whole transaction." Transcript of 2/27/90 at 24. Despite the deference which a reviewing court owes the magistrate who signs a warrant, *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), the court concludes that the warrant application did not set forth sufficient probable cause to search for records.

On this point the decision in *People v. Singer,* 44 A.D.2d 730, 354 N.Y.S.2d 178 (3d Dept.1974), *aff'd without opinion,* 36 N.Y.2d 1006, 374 N.Y.S.2d 612, 337 N.E.2d 126 (1976), is instructive. That case like this one involved an anticipatory warrant revolving around the planned delivery to a residence of a package of marijuana. In a fashion similar to this case, the delivery was attempted but not successful. The defendant was arrested when he attempted to pick up the package at the carrier's office. After the defendant was arrested, the officers executed the warrant. The court in *Singer* upheld the warrant because it not only sought seizure of the package, but also seizure of "any paraphernalia and/or written records used in the illicit trafficking of narcotic and dangerous drugs." *Id.* at 730, 354 N.Y.S.2d at 179. The court held that there was probable cause to execute the warrant because a confidential informant of known reliability had reported that the defendant had told him that the marijuana would be packaged

**6.** It is certainly clear that, when compared with the universe of other possibilities, the likelihood was greater that the packages were located at the defendant's apartment. Nonetheless, because the officers never approached Judge Assini, the court need not reach the difficult question of whether Judge Assini, if the intervening facts had been relayed to him, could have prop-

erly found probable cause that the packages would be located at the defendant's residence. The court observes that a Second Circuit panel in *United States v. Travisano,* 724 F.2d 341, 343 (2d Cir.1983), upheld over Judge Kearse's dissent a warrant which was based upon the fact that a getaway car was parked in front of the home to be searched.

for resale at the defendant's residence and because the defendant had indeed been arrested with a quantity of marijuana in his possession. LaFave in his treatise described the court's rationale in *Singer* as follows:

[T]he court ... point[ed] out that this warrant was not entirely anticipatory in light of the informant's information regarding defendant's intention to immediately repackage the marijuana for resale, which made it probable that the paraphernalia needed to prepare the marijuana for retail sale would be found there.

2 LaFave § 3.7(c), at 100.

In the case at bar neither of the additional indicia of probable cause supporting the non-anticipatory aspect of the warrant in *Singer* were present. The warrant application does not recite any information regarding the packaging of marijuana for resale. In addition, the defendant was not found in possession of the marijuana. Moreover, the court observes that the warrant application here only set forth one planned delivery of marijuana, it did not set forth any other drug related activity. *Compare Rivera v. United States*, 728 F.Supp. 250, 260 (S.D.N.Y.1990) (holding that generalized drug activity in the neighborhood of the searched apartments is pertinent to the magistrate's determination that there was probable cause to search those apartments). With the description of only one planned delivery of marijuana, the facts contained in the warrant application did not give rise to a fair probability that Donahue's residence would yield records of drug transactions. *See Travisano*, 724 F.2d at 346 (setting forth fair probability standard).

For the foregoing reasons, the court holds that the warrant and its execution violated the guarantees of the fourth amendment to United States Constitution.

## II

Execution of a search warrant in violation of the fourth amendment does not automatically require that the court suppress the objects seized. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). "The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands," for "[t]he wrong condemned by the Amendment is 'fully accomplished' by the unlawful search and seizure itself." *Id.* at 906, 104 S.Ct. at 3411 (citation omitted). The *Leon* decision declares that the purpose of the exclusionary rule is to deter police misconduct. *Id.* at 916, 104 S.Ct. at 3417; *compare id.* at 921 n. 22, 104 S.Ct. at 3419 n. 22 (the integrity of the courts is only offended when evidence is admitted which, if excluded, would deter police misconduct). Consequently, "the suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.* at 918, 104 S.Ct. at 3418.

The Court in *Leon* established a good-faith exception to the exclusionary rule. Under *Leon*, "evidence is admissible even if it is obtained as the result of a warrant that is wanting in probable cause or is technically defective so long as the authorities have relied in objective good faith on a facially valid warrant." *United States v. Sheppard*, 901 F.2d 1230, 1234 (5th Cir.1990). The Court in *Leon* instructed that good faith is to be found in instances where "a reasonably well trained officer would [not] have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n. 23, 104 S.Ct. at 3420 n. 23. The Court listed four situations where the good-faith exception will not apply. They are, first, the circumstances explored in *Franks v. Delaware* where the issuing magistrate has been misled by false information knowingly or recklessly conveyed by the affiant; second, where the issuing magistrate wholly abandoned his judicial role; third, where the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and, finally, where the warrant is so facially deficient that the officers cannot reasonably presume it to be valid. *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421.

In evaluating the government's invocation of the good-faith exception, this court must initially resolve whether the challenged warrant is facially valid. A warrant which does not "particularize the places to be searched or the items to be seized ... may be so facially overbroad that it precludes reasonable reliance." *Ortiz v. Van Auken*, 887 F.2d 1366, 1370 (9th Cir.1989); *see also Thompson v. County of Rock*, 648 F.Supp. 861, 868 (W.D.Wis.1986). By contrast, a facially valid warrant is one which is signed by a judge, provides a time reference for execution, and reasonably identifies the place to be searched, the items to be seized, as well as the criminal statute which has allegedly been violated. *Brown v. District of Columbia*, 638 F.Supp. 1479, 1488 (D.D.C.1986); *see* N.Y. CPL § 690.45. The warrant in this action meets those requirements. It was signed by Judge Assini; it provides for execution without unnecessary delay; and by incorporation of the warrant affidavit, *see United States v. Spilotro*, 800 F.2d 959, 967 (9th Cir.1986), it identifies the places to be searched, the items to be seized and the criminal statute which has been allegedly violated.

Judge Assini's failure to put either Kroll or Davidson under oath does not destroy the warrant's facial validity. In this regard the Second Circuit decision in *United States v. Matias*, 836 F.2d 744 (2d Cir. 1988), is instructive. In *Matias* the Second Circuit reviewed a telephone warrant in which the affiant was not placed under oath by the magistrate who granted the request for a warrant. The court held that "[b]ecause the failure to put the agent formally under oath was obviously an oversight, the agents' reliance on the facially valid warrant was clearly reasonable under the circumstances." *Id.* at 747. An implicit component of the court's analysis is that the facial validity of a warrant is not jeopardized by failing to place under oath the affiant who applies for a warrant. In the present case, the court finds that Judge Assini's failure to put either Davidson under oath, or to ask to see Kroll to place him under oath, was "obviously an oversight." The failure of the Judge to place either

officer under oath does not prevent the government from invoking the good-faith exception to the exclusionary rule.

As the Supreme Court expressly stated in *Leon*, however, the good-faith exception does not excuse the presence of false statements in an affidavit submitted in support of a warrant. It is beyond peradventure that the warrant application contained false statements. Officer Kroll who signed the application knew, contrary to the handwritten supplement, that the packages had not been delivered or accepted by Donahue.

Nonetheless the presence of these false statements does not prevent the operation of the good-faith exception because these false statements did not mislead Judge Assini. *Compare Leon*, 468 U.S. at 923, 104 S.Ct. at 3421. Indeed, Judge Assini testified that he relied upon Davidson's oral answers regarding the whereabouts of the packages and the planned controlled delivery. Furthermore, with respect to the documents and records, Judge Assini apparently concluded that the shipment of the two packages provided probable cause to believe that the records and documents existed.

For the remaining discussion related to the good-faith exception, it is helpful once again to consider the warrant as containing both an anticipatory element and a non-anticipatory element. Insofar as the warrant is anticipatory, the court holds that the good-faith exception will not save the seized objects from suppression. Kroll knew that one aspect of the warrant was anticipatory and that the event which would trigger the anticipated probable cause was the delivery of the packages. However, Kroll never witnessed the delivery; nor did he learn of the delivery from any source, much less a reliable source. Accordingly, a reasonably well trained officer in Kroll's position would know that, insofar as the search was predicated on anticipated probable cause, the search "was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23. To permit the good-faith exception to save the anticipatory aspect of the warrant would be to disregard

the Second Circuit's clear direction that if the planned event does not transpire an anticipatory warrant is void. *Garcia,* 882 F.2d at 702.

▇▇▇ Nonetheless, this court determines that the non-anticipatory aspect of the warrant permits the fruits of the search to be rescued from suppression. Judge Assini believed that the facts presented to him permitted the officers to search for records or documents relating to the two schemes. As stated earlier, this court is of the opinion that the officers did not present Judge Assini with sufficient facts to demonstrate a fair probability that records or documents of any drug transaction would be found at the defendant's residence. Even so, the officers were entitled to rely on Judge Assini's determination that there was probable cause that the records or documents would be located there. The warrant application presented to Judge Assini was not a "bare bones" affidavit, but rather contained many objective facts including the contents of one of the packages, the packages' weight and the delivery address. As the Court emphasized in *Leon,* "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause." 468 U.S. at 914, 104 S.Ct. at 3416. Because the officers were armed with Judge Assini's warrant which authorized the non-anticipatory search for records and documents, their seizures will not be suppressed.

### III.

The motion to suppress is denied. The case is transferred back to Judge McAvoy for trial.

It is So Ordered.