**UNITED STATES of America**

v.

**Bernabe DIAZ**

**No. CR. 3:03CR233(EBB).**

United States District Court, D. Connecticut.

Feb. 3, 2004.

---

*Omnibus Ruling on Defendant's Motion
for Bill of Particulars and Motions
to Suppress*

BURNS, Senior District Judge.

## INTRODUCTION

Defendant Bernabe Diaz (hereinafter "defendant" or "Diaz") moves for a bill of particulars, and to suppress evidence obtained as a result of a search and seizure of his home, as well as statements defendant made to law enforcement officials during such search [Doc. Nos. 47, 49 and 51]. For the reasons set forth below, the defendant's pre-trial motions are denied.

## BACKGROUND

On March 31, 2003, a minor victim (hereinafter "Jane Doe" or "Jane"), informed the Danbury Police Department that she had been sexually assaulted by the defendant and another individual from the time she was thirteen, through December 2001 or January 2002, when she was sixteen. Jane Doe advised the police department that the sexual encounters occurred at her home, as well as at the defendant's former residence, 72 Cedar Drive in Danbury, Connecticut, and that

some of these incidents had been video-taped. Diaz, the defendant, is a former police officer with the Danbury Police Department, and a lawyer whose practice includes criminal defense work.

On April 3, 2003, the Danbury Police Department obtained a warrant to search the defendant's current residence, 1504 Bradford Drive. The defendant had moved from his Cedar Drive residence, where the alleged illegal acts took place, to 1504 Bradford Drive, Danbury, Connecticut in June 2002. The warrant application included an affidavit by Detective Mark Williams and Detective Rachel Halace, members of Danbury Police Department's Youth Bureau. The affidavit included statements made by Jane Doe and Jane Doe's father, attesting to the fact that the defendant had sexually assaulted Jane Doe on various occasions at his previous home on Cedar Drive, and that video tapes had been made of sexual activity involving Jane and another person. Jane Doe reported that the defendant owned the video camera, and that she had last viewed one of the videos she was in at her own home around December 2002 or January 2003. She also stated that she believed that her mother had since given the video back to the defendant.

The warrant application also included statements by the affiants, Detective Williams and Halace, based on their training and experience, explaining that persons who engage in sexual activity using pornographic videos and other sexual aids, and person who engage in sexual activity with minors, tend to keep possession of these items for extended periods of time and are unlikely to destroy them. (Defense Exhibit A at 3f) The warrant, which was executed on April 3, 2003, authorized the search of 1504 Bradford Drive, and the seizure of:

Pornographic magazines, pornographic videos, videotape recorders and cameras, DVD's, DVD players, any sexually explicit materials, and photographs with juveniles in them, names and phone lists of juveniles, vibrators, dildos and any other objects used for sexual gratification, a money clip with an Indian on it, and information relating to the receipt of dissemination of any and all photographs or other visual reproductions relating to child pornography, including minors engaged in sexual activities.

The defendant was not at home when the search began, however, he was advised that the warrant was being executed and thereafter voluntarily went to his home. At approximately 12:10, when the defendant arrived at his residence, but before he entered his home, he was provided with a copy of the search warrant. He called his attorney on his cell phone from the front lawn, and then entered his residence. While inside, he made several statements to the searching officers regarding the evidence they were looking for, including stating that the officers would not find "a video of me and [Jane]." [1] The defendant then gave the officers his cell phone so they could call him when they were finished with the search, and left the premises.

While searching defendant's home, the officers located numerous computers and computer media equipment, which led the officers to call the FBI for assistance. After receiving FBI approval, a Danbury police officer called the defendant on his cell phone and ask for his consent to search the computers and related equipment. Defendant consented to the search

---

1. The government plans to use such statements at trial as evidence of defendant's guilt, because of the alleged fact that at the time the statement was made, defendant had not been informed of the specific nature of the evidence they were seeking.

over the phone; and, at the request of the officer, returned to his home in order to execute a written consent form. The form the defendant signed states that:

> I Bernabe Diaz, having been informed of my Constitutional Right not to have a search and seizure made without a search warrant and my right to refuse to such a search and seizure, do hereby consent to allow members of the [Danbury Police Department and FBI] conduct a complete search of my residence, place of business, garage and/or 2 Covenant Tech Computers, and 1 Compaq Ser. No. 6126FCDZA232 computer with all hard drives, hardware, media, etc. located at 1504 Bradford Drive, Danbury Connecticut and all appurtenances thereto. These police officers are authorized to take from the aforesaid location such materials or other property as they may desire, and that these items may be brought to a Forensic Laboratory for examination. This written permission is being given by me to the above named members of the above named agencies voluntarily and without duress, threats or promises of any kind.

After defendant left his home for the second time, FBI agents arrived at the residence, and, after being briefed on the facts of the criminal investigation, decided to participate. As the search continued, the officers hooked up a digital video camera to the television and found pornographic footage involving a minor performing sexual acts. This video was determined to be direct evidence of child pornography, and the investigative team decided they had probable cause to arrest Diaz. He was eventually arrested upon his return to his residence.

The following day, on April 4 2003, A federal search warrant was obtained from Magistrate Judge Holly B. Fitzsimmons, for seizure of the items that the defendant

had consented to being seized and that were already in FBI custody. A forensic examination of the materials occurred thereafter, locating images of child pornography on disks and hard drives, and identifying internet activity by the defendant on child pornographic websites. The government intends to introduce the above evidence at trial.

## Legal Analysis

### I. Motion for Bill of Particulars

The defendant moves this court to order the government to provide a bill of particulars specifying as to count one and two (1) the specific dates and locations of the alleged unlawful activity, (2) the nature and means of interstate commerce alleged to be used by the defendant to transport the materials in question and (3) with respect to the conspiracy count, the date and location where said conspiracy was allegedly formed, the date and location of the overt acts alleged, and the date and location of the original occurrence of the principal offenses charged. (Def.'s Mot. for Bill of Particulars at 1–2).

A bill of particulars is required only when the charges set forth in the indictment are so general that they fail to inform the defendant of the specific acts of which he is accused. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.), *cert. denied*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). A defendant must possess information specific enough to enable him to prepare an adequate defense, to prevent surprise at trial, and to allow him to plead double jeopardy if that becomes necessary at a later time. *United States v. Murgas*, 967 F.Supp. 695, 702 (N.D.N.Y.1997).

In determining whether the defendant has received sufficient information to allow him to prepare for trial, a court

should consider any information obtained by the defendant through discovery, as well as that contained within the indictment. *United States v. Muyet*, 945 F.Supp. 586, 599 (S.D.N.Y.1996). The government is not required to reveal to a defendant all of the evidence it will produce at trial. *United States v. Feola*, 651 F.Supp. 1068, 1133 (S.D.N.Y.1987), *aff'd*, 875 F.2d 857 (2d Cir.), *cert. denied*, 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989). Indeed, because a bill of particulars serves to restrict how the government may present its case at trial, the question is not whether the information sought would be beneficial to the defendant, but whether it is necessary for his defense. *United States v. Young & Rubicam, Inc.*, 741 F.Supp. 334, 349 (D.Conn.1990).

 In the present case, the defendant asks for the exact dates and specific acts the government alleges he performed, and the precise means by which the pornographic materials were transported in interstate commerce. These details lie outside the range of information to which the defendant is entitled. A bill of particulars may not be used as a tool to get an advance view of the government's evidentiary theory. *Torres*, 901 F.2d at 234. Taking into consideration both the indictment and materials the defendant has received in discovery, the Court finds that Diaz has been adequately informed of the allegations against him. The indictment tracks the statutory language of the offenses charged and sufficiently apprises the defendant of the nature of the accusation against him, thus satisfying Fed. Rule Crim. P. 7(c)(1). *United States v. Bagaric*, 706 F.2d 42, 61 (2d. Cir.1983). With respect to the charge of conspiracy, the general rule in conspiracy cases is that the defendant is not entitled to obtain detailed information about the conspiracy in a bill of particulars. *Murgas*, 967 F.Supp. at

702; *Muyet*, 945 F.Supp. at 599 (holding that the defendants in a conspiracy case may not obtain the "... 'whens', 'wheres', and 'with whoms'..." in a bill of particulars).

Furthermore, the government represents that it has met with the defendant on several occasions, during which times it has outlined the government's evidence against the defendant, specific acts that the government believes are relevant to defendant's liability, and explained their theory of the case. (Government's Omnibus Resp. at 8, fn 1.) In addition, during discovery, evidence such as the supporting affidavit to the search warrant, which includes detailed information of the alleged illegal acts which the government has charged, has already been provided to the defendant. Thus, the Court concludes that the defendant has received sufficient information in the indictment and discovery materials to allow him to prepare adequately for trial and conduct his defense. *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir.1984). To require the government to provide further details would unfairly restrict the government's trial preparation. For these reasons, the defendant's Motion for a Bill of Particulars [Doc. No. 49] is denied.

## II. *Motion to Suppress Evidence and Statements*

Defendant next moves this court to suppress all evidence seized during the search of his residence, 1504 Bradford drive. Defendant argues that the state search warrant issued was defective because the information provided was stale, and was insufficient to establish probable cause to issue a valid search warrant. Based on the premise that the original search was unlawful, the defendant also moves to suppress all statements he made to officers during their search, and all evidence

seized as a result of the written consent defendant gave to the searching officers.

A. *Validity of Search Warrant*

 Defendant argues that the search warrant issued giving police the authority to search his residence at 1504 Bradford Drive was defective because the information provided in the affidavit was stale, and because there was insufficient evidence to establish probable cause. The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; see also Fed. R.Crim.P. 41. In a seminal case, the Supreme Court adopted a totality of the circumstances test for determining whether probable cause exists, asserting that "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238–239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). Defendant first claims that because the illegal conduct alleged in the affidavit in support of the search warrant had ceased approximately 16 months prior, the information had become stale, and was therefore insufficient to establish probable cause. To justify a search, probable cause must be current and not rest on facts which existed in the past, unless there is reason to believe those facts are still in existence. *United States v. Beltempo*, 675 F.2d 472, 477 (2d Cir.1982), 3 C. Wright, Federal Practice and Procedure § 662 at 23 (1969). In essence, information proffered in support of a search warrant application is stale when it "is so old that it casts doubt on whether the fruits or evidence of a crime will still be found at a particular location." *United States v. Lamb*, 945 F.Supp. 441, 460 (S.D.N.Y.1996). In deciding whether information in a warrant application is stale, the Second Circuit has identified several determining factors, including "the currency and specificity of the information, the reliability of the sources of information, the nature of the alleged criminal activity, the duration of that activity in the location in question and the nature of the evidence being sought." *United States v. Paul*, 692 F.Supp. 186, 191 (S.D.N.Y.1988) (citing *United States v. McGrath*, 622 F.2d 36, 42 (2d Cir.1980)).

In the case before us, the affidavit in support of the search warrant alleges illegal child pornographic activity that occurred for a period of approximately two to three years, but had ceased sixteen months prior to the application for the warrant. While there was a recognizably significant time lapse between the alleged conduct and the search warrant application, the nature of the alleged criminal activity justifies the magistrate's finding that there was probable cause to believe that evidence of the offenses would be located at defendant's residence at the time the search warrant was requested.

In child pornography cases, courts have repeatedly recognized that collectors of child pornography tend to retain their materials. *United States v. Cox*, 190 F.Supp.2d 330, 333 (S.D.N.Y.2002). As one of our sister courts noted:

The observation that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes is supported by common sense and the cases. Since

the materials are illegal to distribute and possess, initial collection is difficult. Having succeeded in obtaining images, collectors are unlikely to quickly destroy them. Because of their illegality and the imprimatur of severe social stigma such images carry, collectors will want to secret them in secure places, like a private residence. This proposition is not novel in either state or federal courts: pedophiles, preferential child molesters, and child pornography collectors maintain their materials for significant periods of time.

*United States v. Lamb,* 945 F.Supp. 441, 460 (N.D.N.Y.1996); *see also United States v. Ricciardelli,* 998 F.2d 8, 12 n. 4 (1st Cir.1993) ("history teaches that collectors [of child pornography] prefer not to dispose of their dross, typically retaining obscene materials for years"); *United States v. Hay,* 231 F.3d 630, 633–36 (9th Cir.2000), *cert. denied,* 534 U.S. 858, 122 S.Ct. 135, 151 L.Ed.2d 88 (2001) (probable cause to believe child pornography would be found in defendant's computer despite passage of six months from single transmission of nineteen computer graphic files containing child pornography to defendant's computer because affidavit explained that collectors of child pornography rarely if ever dispose of it).

As in the cases cited above, the warrant application submitted to search defendant's home contained statements regarding the retention practices of those who create or distribute pornographic videos, thereby mooting any possible issue that the information was stale. This court rejects defendant's argument that there was insufficient information in the affidavit for a judge to reasonably apply the line of authority supporting the proposition that those involved in sexually deviant behavior tend to keep their materials for a significant time. Defendant somehow finds solace in the fact that at the time of the defendant's sexual encounters with Jane Doe, she was thirteen years old, and he is therefore not a pedophile. Pedophilia, however, is not a requisite finding to determine that one involved in child pornography is likely to have retained the materials connected with the activity. Further, defendant's argument that the standard regarding retention practices of child pornographers should not have been invoked in his probable cause · determination because he did not have a prior criminal history of child pornography is without merit. The affidavit provided evidence that the defendant was involved in the child pornography industry, as defined by Title 18 United States Code §§ 2251(a)and (d), § 2252(a)(5), § 2256(8)(A) and 2. Therefore, the officers were not required to show a prior history of child pornographic activities, and the magistrate was reasonable in her consideration of the line of cases that have found that child pornographers retain materials for significant lengths of time.

■ Further, "[w]here the activity is of a continuing nature a greater time lapse is justified than where the offense is an isolated one." *Beltempo,* 675 F.2d at 477. In the present case, the illegal sexual conduct attested to by the affiant occurred over a period of at least two years, possibly three. In addition, Jane Doe, the victim of defendant's alleged illegal activity, stated that three to four months prior to making this statement, she had seen a video tape in which she was involved in sexually explicit acts. She further stated that she believed her mother had given the tapes back to the defendant at that time, allowing for a reasonable inference that the defendant was still involved in child pornographic activity. While the production of child pornography with respect to Jane Doe had ceased, there was more recent evidence suggesting that defendant still possessed the pornographic

materials, and was therefore still in violation of the law. In sum, the statement by Jane Doe that the defendant had sexually assaulted her numerous times, that the actions had been taped with his video camera, and that her mother had recently returned such materials to the defendant, together with the officer's statements regarding child pornographer's retention practices, provided enough probable cause for a reasonable person to believe these materials may be at his home, and issue a search warrant on that basis.

 Defendant also argues that the affidavit is conjectural, and devoid of any direct knowledge by Jane Doe regarding the location of the video tapes, since she had never been to his new home. The affidavit included a statement by Jane Doe stating "I think this tape is at Bernie's house in Danbury now because my mom gave it back to him. It was his video camera she used to make the video tape." (Defendant's Exhibit A. at 3e) Contrary to defendant's claim, the fact that the alleged illegal conduct occurred in defendant's prior residence, and that Jane Doe had never been to defendant's new home, does not negate the determination that there was a fair probability that evidence of the crimes would be found in defendant's current residence. "There is no constitutional requirement that an affidavit must attest to a personal observation of criminal activity at the premises to be searched...The critical issue is whether there was probable cause to believe that the evidence was then located at the premises named in the warrant." *United States v. McCall*, 740 F.2d 1331, 1337 (4th Cir.1984) (citing *United States v. Rahn*, 511 F.2d 290 (10th Cir. 1975); *United States v. Mulligan*, 488 F.2d 732 (9th Cir.1973)). It was reasonable for the issuing judge to conclude that because the defendant sold his old residence and purchased and moved into another, he took his personal belongings with him, including evidence of his pornographic conduct. While this court does not generally approve of searches conducted pursuant to a warrant issued many months after criminal activity has occurred, or condone searching places where no criminal activity is alleged to have occurred, the unique facts of this case provided probable cause to believe defendant still possessed the illegal materials.

 Even if the information submitted in support of the search warrant was stale or inadequate to constitute probable cause, the good faith exception to the exclusionary rule is applicable to this case. *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). "Under *Leon*, 'evidence is admissible even if it is obtained as the result of a warrant that is wanting in probable cause or is technically defective so long as the authorities have relied in objective good faith on a facially valid warrant.'" *United States v. Moore*, 742 F.Supp. 727, 737 (S.D.N.Y.1990) (quoting *United States v. Sheppard*, 901 F.2d 1230, 1234 (5th Cir.1990)). This court finds that it was an objectively reasonable law enforcement activity to seek and expedite a search warrant based on information that a teenage girl had been subject to sexual molestation over a lengthy period of time, which was videotaped, despite the lapse of time that had occurred. Further, there is no indication in this record of the presence of any of the four circumstances that the *Leon* court identified, where reliance on a warrant would not be objectively reasonable. 468 U.S. at 923, 104 S.Ct. 3405. The Danbury Police Officers did not deliberately or recklessly mislead the magistrate judge in the warrant application, there was no evidence that the magistrate judge abdicated her duty as a neutral fact finder, the warrant was sufficiently particular, and the affidavit was not so lacking in

probable cause that reliance on it would be objectively unreasonable. *See id.* Therefore, even if the information the warrant was issued upon was found to be insufficient to establish probable cause, the officer's good faith reliance on the warrant was reasonable, and therefore no fourth amendment violation can be established.

B. *Suppression of Evidence Seized with Defendant's Consent & Defendant's Statements Made During Search*

Defendant also moves this court to suppress statements he made to officers during the search of his home, and to suppress the evidence seized pursuant to the written consent defendant gave the officers while conducting the search. Defendant's main argument in support of such motion is that the statements he made to the police, and his consent to search the computer equipment in his home, were the direct product of the original search, which was tainted by an invalid search warrant. Defendant does not dispute that the statements he made to the officers were voluntary and spontaneous, or made without inquiry by law enforcement officers. Because this court found that the search was conducted pursuant to a valid search warrant, and executed in good faith, this court also rejects defendant's claim that the statements he made during the search, and the items seized based on his written consent, were tainted in any way.

 Defendant also claims that even if defendant's consent is determined to be valid, the scope of the search was broader than the consent defendant gave, and defendant was not apprised of his rights before he signed the consent form. Contrary to defendant's assertion, the written consent form defendant signed acknowledged:

Bernabe Diaz, having been informed of my Constitutional Right not to have a search and seizure made without a search warrant and my right to refuse to such a search and seizure, do hereby consent to allow members of the [Danbury Police Department and FBI] conduct a complete search of my residence, place of business, garage and/or 2 Covenant Tech Computers, and 1 Compaq Ser. No. 6126FCDZA232 computer with all hard drives, hardware, media, etc. located at 1504 Bradford Drive, Danbury Connecticut and all appurtenances thereto.

(Defendant's Exhibit C).

Therefore, defendant clearly was informed of his right to deny the search, and consented to a "complete" search of his residence, despite his contention that the form was only intended to search the computers and should not have been used "to justify the entire search of the residence." (Defendant's Reply Mem. In Support of Motions to Suppress at 9.) Both the original search warrant and the written consent signed by defendant specifically allowed a complete search of defendant's residence. Therefore, This argument lacks merit.

 Finally, defendant filed no affidavit reciting any supporting facts to his assertion that the events in question occurred differently then attested to in the Police Report. The Second Circuit has made very clear that a defendant seeking to suppress evidence bears the burden of demonstrating disputed issues of fact that would justify an evidentiary hearing. *See United States v. Culotta,* 413 F.2d 1343, 1345 (2d Cir.1969). The required showing must be made by an affidavit from an individual with personal knowledge of the underlying facts. *See United States v. Ruggiero,* 824 F.Supp. 379, 393–94 (S.D.N.Y.1993) (finding a motion to suppress not supported by the proper affidavit may be denied without a hearing). Because defendant has provided no such affi-

davit and there is no basis for suppressing such evidence on the existing record, defendant's request for oral argument is denied.

### CONCLUSION

For the preceding reasons, defendant's Motion For a Bill of Particulars [Doc. No. 49], Motion to Suppress Evidence [Doc. No. 47] and Motion to Suppress Statements [Doc. No. 51] are DENIED.

SO ORDERED