**UNITED STATES of America,**

**v.**

**Luis A. MURGAS, a/k/a Big Louie, a/k/a/ Barosa; Luis E. Cordoba–Murgas, a/k/a Negro, a/k/a Carlos; Luis Antonio Todd–Murgas, a/k/a/ Little Louie; Cesar A. Todd–Murgas, a/k/a Tony, a/k/a Pepita; Raul Antonio Cordoba–Murgas, a/k/a Strawberry; Jose C. Dominguez, a/k/a Pachito; Ruben A. Todd–Murgas; Vincente Rogers, a/k/a Santos; Gilberto Arce, a/k/a Luigi Santiago; Jayson Jones; Dennis J. Calandra, Jr.; Tiffany**

**Gaudinot; and Tricia Irving, Defendants.**

**No. 95–CR–384 (HGM).**

United States District Court, N.D. New York.

April 15, 1997.

696

Thomas J. Maroney, United States Attorney, Syracuse, NY, for U.S.; Grant C. Jaquith, Assistant United States Attorney, of counsel.

Frank Policelli, Utica, NY, for Defendant Luis A. Murgas.

Calvin Domenico, Rome, NY, for Defendant Luis E. Cordoba–Murgas.

William M. Borrill, Whitesboro, NY, for Defendant Luis Antonio Todd–Murgas.

William D. Walsh, Syracuse, NY, for Defendant Cesar A. Todd–Murgas.

Angelo A. Rinaldi, Syracuse, NY, for Defendant Ruben A. Todd–Murgas.

Richard P. Ferris, Utica, NY, for Defendant Gilberto Arce.

Norman P. Deep, Clinton, NY, for Defendant Jayson Jones.

Stephen Lance Cimino, Syracuse, NY, for Defendant Vincente Rogers.

Raymond J. Dague, Syracuse, NY, for Defendant Tiffany Gaudinot.

Lisa A. Peebles, Central Square, NY, for Defendant Tricia Irving.

Robert G. Wells, Syracuse, NY, for Defendant Raul Antonio Cordoba–Murgas.

Neal P. Rose, Sherrill, NY, for Defendant Dennis J. Calandra, Jr.

## MEMORANDUM–DECISION & ORDER

MUNSON, Senior District Judge.

### I. BACKGROUND

On March 21, 1996, the Grand Jury charged the defendants in an eight count second superseding indictment. The United States alleges that from 1991 until their arrest in March of 1996, the defendants were engaged in a conspiracy to distribute large quantities of powder and crack cocaine in Rome, New York, and the surrounding Oneida County area.

Count I of the indictment charges Raul Antonio Cordoba–Murgas with wilfully failing to deport from the United States in violation of 8 U.S.C. § 1252(e). Count II of the indictment charges all defendants with engaging in a conspiracy with intent to distribute and distribution of powder and crack cocaine, in violation of 21 U.S.C. § 846. Count III through Count VII charges defendants Vincente Rogers, Ruben A. Todd–Murgas, Gilberto Arce, Cesar A. Todd–Murgas, Luis E. Cordoba–Murgas, and Jayson Jones respectively with "knowingly and intentionally possess[ing] with the intent to distribute and distribut[ing] cocaine," in violation of 21 U.S.C. § 841(a)(1). Lastly, Count VIII charges all defendants with forfeitures of currency and automobiles pursuant to 21 U.S.C. § 853.

According to the United States, the inner circle of the drug enterprise included Luis E. Cordoba–Murgas, Cesar A. Todd–Murgas, Luis A. Murgas, Luis Antonio Todd–Murgas, Raul Antonio Cordoba–Murgas, and Jose C. Dominguez. In recent years, the government alleges that the enterprise paid defendant Jayson Jones to store the cocaine at his residence. When a distributor in the enterprise needed cocaine for a transaction, the distributor would then obtain it from Jones. Jones was also used to transport the cocaine from New York City—the apparent geographical source of the cocaine for the conspiracy—to Rome, New York.

The defendants were arrested on March 8, 1996. Also on this date, the government, including agents of the Central New York Drug Enforcement Task Force,[1] executed

---

1. The Central New York Drug Enforcement Task Force is a multi-agency task force that is com-

several search warrants. During the execution of the warrants, the government seized nearly $30,000 in currency. Included in the seized currency were "official government" funds previously paid by the government to members of the conspiracy for cocaine. Additionally, large quantities of powder cocaine were seized at the residence of Jones.

Presently before the court are defendants' omnibus pretrial and discovery motions. Defendants made over 120 separate motions in more than 25 distinct categories, and the government cross-moved for disqualification of one of the defendant's attorneys. The court heard oral argument on December 13, 1996 at a special motion term in Syracuse, New York. During oral argument, the court granted defendants motions for preservation of law enforcement notes, for an audibility hearing, for an evidentiary hearing in furtherance of a motion to suppress statements, and for a conflict of interest hearing.[2]

On January 15, 1997, the court held the conflict hearing to determine whether defendant Luis Cordoba–Murgas made a knowing and intelligent waiver of his rights under the Sixth Amendment to an attorney free from any potential or actual conflict of interest. At the conclusion of the hearing, the court held that defendant did make such a waiver and therefore, was entitled to be represented by the attorney of his choice, Calvin J. Domenico, Jr.

On January 27, 1997 the court held a evidentiary hearing in connection with defendant Jones' motion to suppress several statements given to law enforcement officers in connection with a search warrant executed on March 8, 1996. At the conclusion of the hearing, the United States requested and reserved the right to offer rebuttal evidence.

On January 29, 1997 the government notified the court and defense counsel that it did not intend to offer any rebuttal evidence, and that it was satisfied with the record without any rebuttal evidence. Thereafter, on February 13, 1997, both Jayson Jones and the government submitted their closing statements, as directed to do so by the court. The decision of the court with respect to that particular motion, as well as the outstanding omnibus motions, is set forth below.[3]

## II. DISCUSSION

### A. PRETRIAL MOTIONS

#### 1. *Bill of Particulars*

■ Defendants Luis Cordoba–Murgas, Cesar Todd–Murgas, Ruben Todd–Murgas, Vincente Rogers, and Tricia Irving move for the production of a bill of particulars pursuant to Fed.R.Crim.P. 7(f). Rule 7(f) provides that a court, within its discretion, may direct the government to file a bill of particulars. Fed.R.Crim.P. 7(f); *see United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir.1984). Bills of particulars are used to protect a particular defendant from another prosecution for the same offense, to enable a defendant to adequately prepare his defense, and to avoid surprise at trial. *See United States v. Torres*, 901 F.2d 205, 234 (2d Cir.1990). A bill of particulars should not be used as a general discovery tool nor should it be used to circumvent a result not intended by Fed. R.Crim.P. 16. *Torres*, 901 F.2d at 234. Thus, where the indictment and discovery materials are sufficient to allow a defendant to prepare a defense with reasonable diligence, a court will generally not order that

---

posed of deputized special agents from the DEA, New York State Police, the City of Syracuse Police, and Onondaga County Sheriff's Office.

2. On February 20, 1997, Magistrate Judge DiBianco assigned substitute counsel, William D. Walsh, to represent Cesar A. Todd–Murgas in this matter. On December 4, 1996, the original counsel for Cesar Todd–Murgas filed pre-trial motions on his behalf, and the government responded to these motions. Thereafter, on March 17, 1997, William Walsh filed an additional 17 motions on behalf of Cesar Todd–Murgas. On March 24, the government responded to these

new motions. The court's ruling with respect to both sets of motions filed on behalf of Cesar Todd–Murgas are incorporated into this decision and set forth herein.

3. Subsequent to the Grand Jury handing down the indictment, defendants Luis A. Murgas, Tiffany Gaudinot, and Dennis J. Calandra, Jr. entered guilty pleas. The motions on behalf of Luis Murgas are therefore rendered moot. There were no motions filed on behalf of Tiffany Gaudinot and Dennis Calandra.

the government file a bill of particulars. *See Panza,* 750 F.2d at 1148.

■ More specifically, with respect to bills of particulars in conspiracy cases, the general rule is that the defendants do not need detailed evidence about the conspiracy in order to adequately prepare for trial. *See, e.g., United States v. Feola,* 651 F.Supp. 1068, 1132–33 (S.D.N.Y.), *aff'd,* 875 F.2d 857 (2d Cir.1989) (defendants in conspiracy case need not know the means by which it is claimed they performed overt acts; details as to how and when the conspiracy was formed, or when each participant entered the conspiracy; whether a particular defendant was present at alleged meeting in furtherance of the conspiracy; and the locations which the conspirators are alleged to have violated the statute). Courts have also held that matters such as the exact time and place of the overt acts and the names and addresses of persons present during meetings were not properly the subject of a bill of particulars. *See United States v. Wilson,* 565 F.Supp. 1416, 1438 (S.D.N.Y.1983).

■ Here, the court has reviewed the specific requests by each of the defendants and finds, for the most part, the second superseding indictment and the discovery made available to the defendants contain specific information sufficient to allow defendants to prepare a adequate defense, to avoid surprise at trial, and to plead the bar of double jeopardy at a later date should that become necessary. *See United States v. Payden,* 613 F.Supp. 800, 816 (S.D.N.Y.1985) (bill of particulars not necessary where court determines information sought has been provided elsewhere in discovery and the indictment).

However, the court directs that two particulars be disclosed to defendants, to the extent that the government possesses the particularized information and it has not yet been disclosed. The government must disclose the identities of all persons the government claims to have been coconspirators during the course of the alleged conspiracy,

regardless of whether they have been indicted. While the government need not disclose the addresses of such coconspirators, the government is directed to disclose whether any coconspirators are in federal, state, or protective custody. Additionally, the government should disclose the amount of controlled substance it will seek to attribute to defendant Tricia Irving at trial as well as the amount of money exchanged for the given amount of controlled substance. The remaining information sought by defendants is either contained in the indictment and discovery furnished by the government or is the type of information that is not available through a bill of particulars. Therefore, the court grants the defendants' motions for a bill of particulars to the extent set forth above.

### 2. *James Hearing*

■ Defendants Ruben Todd–Murgas, Jayson Jones, and Tricia Irving move for a pre-trial hearing on the admissibility of coconspirator statements. These motions for such a hearing—also referred to as a *James* hearing pursuant to *United States v. James,* 590 F.2d 575 (5th Cir.1979)—need not detain the court long. As then–Chief Judge Brieant so aptly stated: "[A] motion for a *James* hearing in this Circuit must be regarded as frivolous. Defendants who want *James* hearings should so conduct their business as to be tried in the Fifth or Eleventh Circuits." *United States v. Feola,* 651 F.Supp. at 1130; *see United States v. Walker,* 922 F.Supp. 732, 746 (N.D.N.Y.1996).

Accordingly, the court denies defendants' motions for a pre-trial hearing on the admissibility of coconspirator statements.

### 3. *Suppression of Wiretap Evidence*

■ Defendant Vincente Rogers moves for suppression of wiretap evidence, asserting that the warrants authorizing the wiretaps were deficient. The statutes at issue, 18 U.S.C. § 2518 and N.Y.Crim. Proc. Law § 700.15,[4] require that an interception of

---

4. While the warrants here were issued pursuant to New York statutory authority, the Second Circuit has observed that "the federal and New York statutory requirements are the same" for practical purposes. *United States v. Lilla,* 699 F.2d 99, 102 (2d Cir.1983). The Second Circuit has

wire communication or electronic communication may only be authorized by a court upon a finding of probable cause and a showing that less invasive or traditional investigative procedures have been tried and failed, or that such procedures are unlikely to succeed if tried, or that such procedures are too dangerous to try. 18 U.S.C. § 2518(3); N.Y.Crim. Proc. Law § 700.15 (McKinney 1995). These requirements are " 'simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.' " *United States v. Torres*, 901 F.2d 205, 231 (2d Cir.1990) (quoting *United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225 (1974)). This is not to say, however, that electronic surveillance warrants can only be issued after all other traditional investigative procedures have been exhausted. *See Lilla*, 699 F.2d at 102–103. Rather, the statutes in issue only mandate that the court make its findings in accordance with their requirements. *See id.*

So as to allow a court to make this determination, both the New York and federal statutes require that the *application* for an order authorizing an interception set forth a full and complete statement establishing that such traditional methods were tried and failed, are unlikely to succeed if tried or are too dangerous to employ. *See* N.Y. Crim. Proc. Law § 700.20(2)(d); 18 U.S.C. § 2518(1)(c).

■ It is the sufficiency of the applications for the warrants that the defendant attacks in the case *sub judice*. Specifically, defendant asserts that "Nowhere is there contained in the application a full and complete statement regarding alternative investigative techniques, which if used, it is submitted, would suffice to expose the criminal activity." Affidavit of Stephen Lance Cimino, dated August 28, 1996, Docket Document Number ("Doc.") 95, ("Cimino Aff.") at 14–15. Defendant also asserts that the criminal complaint sets forth in compelling fashion how the use

of traditional investigative methods exposed the alleged criminal activity and therefore, "the use of wiretaps was unnecessary and illegal." *Id.* at 15.

The court rejects defendant's position that the affidavits were inadequate. The court has reviewed each successive warrant or extension of warrant issued that the defendant objected to, dated July 21, 1995, August 21, 1995, September 6, 1995, October 5, 1995, October 13, 1995, December 20, 1995, January 24, 1996, February 22, 1996, and March 1, 1996, and finds that they satisfy the statutory requirements. *See* Cimino Aff., exh. "D" (attached warrants). By way of example, in the warrant issued July 21, 1995, one affidavit in support of the warrant set forth that traditional investigative methods, such as controlled purchases of narcotics and conventional surveillance, have been either unsuccessful or utilized with limited success because they "failed to produce sufficient evidence to identify or charge anyone with their roles in this drug distribution network." Affidavit of Investigator Michael D. Grande, dated July 11, 1995, Doc. 100, at 26 (attached to Cimino Aff., as part of exhibit "D"). The affidavit further set forth that the targets of the conspiracy continue to employ counter-surveillance techniques "making conventional surveillance extremely difficult if not impossible." *Id.* Moreover, the affidavit described how the use of pagers or beepers facilitated the illegal narcotics trafficking. The affidavit set forth that the beepers were often utilized "to alert each other as to the availability of product and to arrange covert transactions" and how these beepers allow persons "to conduct transactions at clandestine locations, thus making detection more difficult." *Id.* at 25.

■ Furthermore, the warrants recite that the judge issuing the warrants, in most instances Oneida County Court Judge Donalty, was "satisfied that comparable evidence essential for the investigation and prosecution of these crimes could not be obtained by

previously cited these two provisions together, *United States v. Fury*, 554 F.2d 522, 529 n. 6 (2d Cir.1977), and the New York Court of Appeals has held that the New York Statute was enacted to conform "state standards for court authorized

eavesdropping warrants with federal standards." *Lilla*, 699 F.2d at 102 (internal quotations omitted) (citing *People v. McGrath*, 46 N.Y.2d 12, 26, 412 N.Y.S.2d 801, 807, 385 N.E.2d 541, 547 (1978)).

conventional investigative techniques." Eavesdropping Warrant, dated July 21, 1996, Doc 100, (attached to Cimino Aff., as part of exhibit "D") The court here will give these prior determinations by the issuing judge its due deference, as it is required to do. *See, e.g., Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983).

Defendant further contends that the wiretap evidence should be suppressed for another reason. Defendant asserts that the order authorizing the subsequent use of the intercepted communications by the United States in this prosecution pursuant to 18 U.S.C. § 2517(5) and N.Y.Crim. Proc. Law § 700.65(4) is invalid. Defendant argues, in an apparent extension of his primary argument, that the order is invalid because Judge Donalty could not have made the required determination that the warrants were issued in conformity with federal law based upon deficiencies in the underlying warrants. *See* Cimino Aff. at 15–16. Defendant further points out that the application for the § 2517(5) order is missing certain affidavits and pages contained in many of the affidavits submitted and, therefore, Judge Donalty had incomplete information before him to make a valid finding. *See id.*

The court finds this argument without merit. Section 2517(5) requires that the reviewing judge make a finding that the "contents were otherwise intercepted in accordance with the provisions of this chapter." Here, the reviewing judge on the government's § 2517 application was Judge Donalty. As noted, Judge Donalty was the judge who ordered nearly all the warrants in the first instance. Thus, to say that Judge Donalty may not have had sufficient information before him to make the required determination under § 2517 is implausible. Moreover, the finding by this court that the warrants comply with the statutory requirements undermines any argument that the § 2517 order may be invalid.

Accordingly, the court denies defendant's motion to suppress wiretap evidence.

### 4. *Suppression of Physical Evidence*

■ Defendant Vincente Rogers moves to suppress physical evidence obtained during the execution of a search warrant upon the ground that there exists no probable cause to justify the search of his residence.[5] Specifically, defendant contends that the application was deficient because it was lacking in factual allegations and contained only conclusory allegations. *See* Defendant Rogers' Memorandum of Law, Doc. 96, ("Rogers' Mem.") at 12. The defendant further contends that allegations contained in the application were based upon illegally intercepted wire communication and are therefore fruits of illegal conduct.

"In determining whether a search warrant is supported by probable cause, a flexible, totality-of-the-circumstances standard is employed." *United States v. Feliz–Cordero,* 859 F.2d 250, 252–53 (2d Cir.1988). Probable cause to search a place is determined by making "a practical, commonsense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The "duty of a reviewing court is simply to ensure" that the issuing judge had a "substantial basis for ... conclud[ing] that probable cause existed." *Id.* (citations omitted); *see Rivera v. United States,* 928 F.2d 592, 602 (2d Cir.1991) ("courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than commonsense manner") (quotations and citations omitted); *United States v. Rosa,* 11 F.3d 315, 326 (2d Cir.1993).

As set forth above, the court determined that the interception of wire and electronic communication was legal and thus, can properly serve as a basis for the factual allegations contained in the affidavit in support of the search warrant. *See* discussion *supra* Part II.A.3. Therefore, there is no basis to suppress the physical evidence here as the

---

**5.** The search and seizure receipt and inventory form reveals that the physical evidence seized consisted of the following: an Acculab Pocket Pro 150 scale, a quantity of marijuana, marijuana seeds, $200.00 cash, a "baggie" of white powder, three (3) pagers and miscellaneous papers. *See* Cimino Aff., exh. "C," Doc. 99 (search and seizure receipt and inventory form).

fruits of illegal conduct, as defendant contends.

Moreover, the affidavit contains ample information from which one can readily conclude probable cause existed to suggest that there was illegal activity being conducted at defendant's residence and that the residence would contain contraband. The affidavit, 17 pages in length, set forth in great detail the evidence obtained regarding the conspiracy as well as the involvement of defendant and the use of his residence in the drug conspiracy. *See* Cimino Aff. exh. "B," Doc. 98 (affidavit in support of warrant).

For example, the affidavit details how defendant Rogers was involved in the drug conspiracy and that it was probable that he used his residence, among other places, to store cocaine. *Id.* The affidavit reveals how defendant would advise other parties to phone conversations, also suspected drug conspirators, that he has "it" or "the brick" or "the shit" or "the thing" or "the rock" at his residence and that they should either come and get it or he will deliver it to them. *Id.* at 4, 5, 10–11, 12, 13, 15, 17. As this court recently observed in *United States v. Hargrett,* No. 96–CR–17, 1996 WL 551090, at *13 (N.D.N.Y. Sept.25, 1996), while these terms are "perhaps ambiguous in a vacuum, [they] are inculpating when viewed as part of the conspiratorial diorama." The affidavit also reveals how investigators observed defendant meeting with other suspected drug dealers and traveling to clandestine meetings in automobiles suspected of transporting cocaine. *Id.* at 3–4, 9–10, 11–13, 16. The affidavit also contained accounts of defendant engaging in what they believed to be drug transactions with other suspected drug users and dealers. *Id.* at 3–4, 9–13, 15–16. These examples clearly demonstrate that the judge issuing the search warrant possessed a substantial basis to conclude that probable cause existed to search defendant's residence.

Accordingly, defendant's motion to suppress physical evidence is denied.

---

6. It is undisputed that Jones was undergoing a custodial interrogation entitling him to be informed of his rights as required by *Miranda.*

### 5. *Suppression of Statements*

■ Defendant Jayson Jones moves to suppress his oral and written statements on the grounds that any statements taken from him were in degradation of his constitutional rights because he did not knowingly and intelligently waive his *Miranda* rights. The basis for Jones' motion is that, according to his attorney, Jones "cannot read, is severely dyslexic, and as psychological reports indicate, that the defendant is mentally retarded." *See* Defendant Jones' Memorandum of Law, dated September 3, 1996, Doc. 109 ("Jones' Mem."), at 13. The record reveals that Jones has an intelligence quotient (IQ) between 74 and 81 and has been evaluated as possessing "low average to borderline intelligence." The government responds that defendant Jones waived his *Miranda* rights and that low intelligence does not automatically negate a defendant's waiver of his *Miranda* rights. *See* United States Response to Defendants' Omnibus Motions, dated October 2, 1996, Doc. 119, ("Gov't Response") at 37. The government further sets forth that determining the competence of a defendant to make such a waiver depends on the "totality of the circumstances" and that based upon the circumstances present here, defendant Jones knowingly and voluntarily waived his *Miranda* rights. *Id.*

■ In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court set forth that a defendant's statement made during custodial interrogation may only be used against him if the statement was made voluntarily and that the defendant makes a knowing and intelligent waiver of his Fifth Amendment right against compulsive self-incrimination.[6] *Id.* at 444, 86 S.Ct. at 1612. The government has the "heavy burden" to prove by a preponderance of the evidence that the defendant validly waived his rights and that the statements were obtained voluntarily. *Id.* at 475, 86 S.Ct. at 1628; *see United States v. Anderson,* 929 F.2d 96, 98–99 (2d Cir.1991) ("Because in-custody interrogation contains psychological pressures that cause a suspect

*See, e.g., United States v. Ruggles,* 70 F.3d 262, 265 (2d Cir.1995).

to speak when he would otherwise remain silent, the prosecution must show that this safeguard of informing the accused of his rights was actually employed").

In analyzing whether a defendant validly waived his rights, the court must engage in a two-part inquiry. *See United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995). First, the court must determine whether the waiver was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986). Second, the court must determine whether the waiver was made with "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* Only if the "totality of the circumstances" and the facts surrounding the interrogation, including the background, experience, and conduct of the accused, "reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id.* (quotations and citations omitted); *see United States v. Lynch*, 92 F.3d 62, 65 (2d Cir. 1996). Whether a defendant is competent to make a valid waiver is a heavy fact-specific inquiry. *See Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

Even if a confession is voluntarily given, it may nonetheless be inadmissible if the defendant "lacks the mental capacity to make a knowing and intelligent waiver" of his *Miranda* rights. *United States v. Frank*, 956 F.2d 872 (9th Cir.1991) (citing *Moran*, 475 U.S. at 421, 106 S.Ct. at 1141); *see Jaswal*, 47 F.3d at 542. To be sure, the mentally retarded present significant problems for the courts because they are less likely to understand the implications as well as the consequences of a waiver. *See, e.g., Jurek v. Estelle*, 623 F.2d 929, 937–38 (5th Cir.1980) (a defendant's mental limitations must be taken into account to determine a defendant's "inability to comprehend the circumstances" surrounding a confession); *see also* Paul T. Hourihan, *Earl Washington's Confession: Mental Retardation and the*

*Law of Confessions,* 81 Va. L.Rev. 1471, 1492 (1995) (the mentally retarded are "less likely to understand their *Miranda* rights and the consequences of waiving them, giving rise to concerns about the knowing intelligence of their waivers.").

Although several courts have considered a defendant's limited cognitive ability when determining whether the requirements of a waiver were met, courts have generally concluded that "no single factor, such as IQ, is necessarily determinative in deciding whether a person was capable of knowingly and intelligently waiving ... the constitutional rights embraced in the *Miranda* rubric." *E.g., Fairchild v. Lockhart*, 744 F.Supp. 1429, 1453 (E.D.Ark.1989) (collecting and discussing numerous federal cases where the defendant's limited cognitive abilities were a factor in determining the validity of the waivers), *aff'd*, 900 F.2d 1292 (8th Cir.1990); *see Moore v. Dugger*, 856 F.2d 129 (11th Cir. 1988) (defendant with an IQ of 62 found to validly waive *Miranda* rights); *Harris v. Riddle*, 551 F.2d 936 (4th Cir.1977) (defendant, who had an IQ of 67 and was 17 years old held to possess sufficient comprehension where expert testified that he had a sixth grade intelligence and understood the right to remain silent, although not all of the consequences of giving up that right); *United States v. Young*, 529 F.2d 193, 195 (4th Cir. 1975) (although defendant had a below average IQ, limited education and reading ability, the court held that he validly waived his rights, stating "these factors are not in themselves determinative of the voluntariness of a waiver, for one must examine the totality of the circumstances surrounding the waiver."); *United States v. Marenghi*, 896 F.Supp. 207 (D.Maine 1995) (defendant with "cognitive limitations" and an IQ of 79 validly waived her *Miranda* rights), *aff'd*, 109 F.3d 28 (1st Cir.1997).

Turning to the instant case, Jones presented evidence that suggests he lacked the requisite cognitive abilities to waive his *Miranda* rights knowingly and intelligently. Evaluations of Jones classify him as possessing an IQ of between 74 and 81, and as possessing "low average to borderline intelligence." In contrast, a review of the statements made by

Jones reveal that he was advised of his rights and that he indicated that he understood the consequences of a waiving these rights. *See* Government Suppression Hearing exhibit ("Gov't Supp. exh."), dated January 27, 1997, "1"; Gov't Supp. exh. "2." Jones also acknowledged that he was given these rights and that he understood the consequences by initialing and signing his statement form. *Id.* The statements also reveal that Jones detailed his involvement in the conspiracy as well as his motivation for being involved in the conspiracy. *Id.* These factors suggest that Jones had the capacity to understand the nature and consequences of waiving his rights.

During the suppression hearing, the government proffered the testimony of the law enforcement officers who took the statements from Jones, New York State Police Investigators Luis Rodriquez and Michael Grande. Rodriquez testified that on March 8, 1996, during the execution of a search warrant at Jones' residence, Jones gave his first statement. *See* Transcript of Suppression Hearing, dated February 10, 1997, Doc. 137, ("Supp.Tr.") at 6. Rodriquez testified he advised Jones of his rights using standard language printed on the top of the first page of the statement form. Supp.Tr. at 6–7. After reading Jones his rights, Rodriquez then had Jones read aloud the first couple of rights to ensure that Jones was capable of reading them. Supp.Tr. at 7–8. Rodriquez testified that Jones had no trouble reading the rights. Supp.Tr. at 8. Rodriquez then had Jones initial by each sentence of the rights warning and signed the waiver. Supp.Tr. at 8, 11. Jones stated to Rodriquez that he understood his rights, asked no questions regarding his rights, and gave Rodriquez no indication that he did not understand his rights. Supp. Tr. at 7–8. The statements made by Jones were then reduced to writing and then Rodriquez had Jones read the beginning part of the statement while he read to Jones the remaining portion. Supp. Tr. at 10–11.

Subsequent to the statement being taken by Rodriquez, Jones and Rodriquez traveled to New York State Police Headquarters in Oneida, New York. Supp.Tr. at 15–16. There, Rodriquez and Investigator Grande interviewed Jones and Jones gave his second statement. Supp.Tr. at 16. Before giving this second statement, Jones was advised of his rights a second time by Grande in the presence of Rodriquez. Supp.Tr. at 16, 30–31. Also, Jones specifically asked if he was required to make a statement, and both Grande and Rodriquez informed Jones that he was not. Supp.Tr. at 31. Grande read the first part of Jones' rights to him and then had Jones read the remaining rights aloud so Grande could determine whether Jones could read. Supp.Tr. at 31. Grande then instructed Jones if he understood his rights, he should so indicate by initialing the statement form, which Jones did. Supp.Tr. at 31; Gov't Supp. exh. "2." According to Grande, Jones appeared to understand his rights and so advised Grande. Supp.Tr. at 31–32.

After Jones was advised of his rights, Grande transcribed the statement given to him by Jones. Supp.Tr. at 34. While Grande was transcribing the statement, Grande read the statement back to Jones and Jones confirmed each portion transcribed by Grande. Supp.Tr. at 34. When Jones did not confirm the portion transcribed by Grande, Jones clarified and corrected the statement. Supp.Tr. at 34–36. Jones signed the top and initialed at the bottom of each of the six pages of the statement verifying its accuracy. Gov't Supp. exh. "2"; Supp.Tr. at 35–38.

As a result of the record before the court and the testimony proffered during the hearing, the court finds that the government met its burden by demonstrating that, under the totality of the circumstances, Jones knowingly and intentionally relinquished his *Miranda* rights. *See, e.g., Moran,* 475 U.S. at 421, 106 S.Ct. at 1140–41. Moreover, while Jones presented evidence that he has a below average IQ, limited education, and impaired reading ability,[7] these limitations do not preclude a finding that he made a knowing and intelligent waiver of his *Miranda* rights.

---

7. Significantly, with respect to Jones' reading difficulties, Dr. Lazzaro conceded that there are individuals who cannot read but nonetheless can possess comprehension levels in the genius range. Supp.Tr. at 98.

First, there was simply no evidence either in the record or from the hearing that rebutted the government's contention that the waiver was voluntarily given. Indeed, the thrust of defendant's argument is that he lacked the capacity to give the waiver; not that the waiver was obtained by duress or that it was otherwise involuntary.

Second, and more importantly, Jones failed to demonstrate that he lacked the capacity to make a knowing and intelligent waiver. At the hearing, defendant proffered the testimony of two experts; Dr. Thomas Lazzaro, a psychologist, and Dr. Patrick Devitt, a psychiatrist. Jones did not testify at the hearing. Both doctors, however, testified that based upon the reading comprehension of defendant, which was evaluated below a second grader, they had doubts whether he would be capable of comprehending his *Miranda* rights. Supp.Tr. at 60, 62–63, 111. The doctors asserted that comprehending the *Miranda* rights requires a reading comprehension level of seventh grade. Supp.Tr. at 60.

Significantly, however, neither doctor testified that defendant did not understand the rights that were given to him. Supp.Tr. at 65, 111. This is, in part, because neither doctor examined the defendant for the purpose of determining whether he understood his *Miranda* rights. Supp.Tr. at 56, 77–78, 107, 115, 116. Dr. Lazzaro examined defendant to determine whether, in his opinion, defendant would be capable of following rules and avoid coerced illegal behavior so that the magistrate judge could make a determination as to defendant's pretrial release. Supp.Tr. at 54–55, 95–97. Dr. Lazzaro therefore did not examine defendant from the perspective

of determining whether defendant understood his *Miranda* rights. Supp.Tr. at 56, 77–78. In fact, Dr. Lazzaro conceded that he never discussed defendant's *Miranda* rights with defendant, even though he acknowledged that his standard practice when determining whether an individual could comprehend his *Miranda* rights is to review the rights with the subject. Supp.Tr. at 54–56, 77–78, 92–93. Thus, even if Dr. Lazzaro did testify that defendant did not make a knowing and intelligent waiver of his *Miranda* rights, the foundation for such an opinion would be questionable.[8] Accordingly, Dr. Lazzaro's testimony is insufficient to preclude the court's finding.

The testimony of Dr. Devitt likewise fails to assist defendant. As was the case with the interview of defendant by Dr. Lazzaro, Dr. Devitt's interview of defendant was not for the purpose of determining whether defendant understood his *Miranda* rights. Supp.Tr. at 107, 115. Moreover, Dr. Devitt did not discuss any rights warnings with defendant, did not read defendant any of the *Miranda* rights, and did not have defendant read anything in his presence. Supp.Tr. at 115–116. Accordingly, even if Dr. Devitt had testified that defendant lacked the requisite ability to comprehend his *Miranda* rights, the foundation for such an opinion would also be questionable.[9]

Alternatively, Jones argues that the court should suppress his statements for a different reason than his waiver argument. In his closing, defendant argues that words and sentences contained in the statements could not be his because the sentence structure and vocabulary are beyond the ability of a

---

8. The government asserts that "... Dr. Lazzaro's testimony actually supports admission of Jones' confessions." The government argues that Dr. Lazzaro testified that he was able to reasonably converse with defendant, that the defendant advised Dr. Lazzaro of the manner as well as the illegality of his involvement in the conspiracy and that the information defendant gave to Dr. Lazzaro appeared to correspond with the information in the confession. Significantly, as the Government noted, Dr. Lazzaro testified that defendant has the ability to plan ahead ideationally, can sequence events and can comprehend the consequences of his actions. United States' Argument in Opposition to Defendant Jayson Jones'

Motion to Suppress His Confessions, dated February 13, 1997, Doc. 138, ("Gov't Supp. Mem.") at 13–14.

9. As the case with Dr. Lazzaro, the government argues that Dr. Devitt's testimony actually supports its position. The government points out that Dr. Devitt agreed with Dr. Lazzaro that defendant comprehends the consequences of his actions and can plan ahead ideationally. More importantly, Dr. Devitt testified "the wording of the particular warning is simple enough for [defendant] to understand." Gov't Supp. Mem. at 14–15 (Supp.Tr. at 117).

mentally retarded person. In support of his position, defendant proffered the testimony of both Dr. Lazzaro and Dr. Devitt who segregated terms from the statements in an attempt to demonstrate that since the words are beyond the comprehension level of defendant, the possibility existed that Jones did not give the complete statements. Supp.Tr. at 85–89, 110–111, 113, 119.

Significantly, Jones did not testify at the hearing that the statement was not his or that he did not understand the meaning of certain words. Moreover, neither doctor testified that he reviewed these words with defendant or that the defendant advised them that they were not his words. Supp.Tr. at 85, 89, 113–114. The doctors merely speculated that given defendant's capacity, such words would be difficult for Jones to understand. Supp.Tr. at 89, 113–114.

The court declines to suppress defendant's statements on this basis. The investigators testified that defendant gave them the statements and that the statements were read back to defendant who agreed with its content. This testimony was unrebutted. The fact that the written statements may not have been transcribed verbatim does not, in the circumstances present, provide a basis to suppress these statements. Furthermore, defendant has not attacked the statements as being inaccurate. Supp.Tr. at 90. Nor do the statements themselves suggest that the investigators embellished the factual basis of the statements. Supp.Tr. at 90; *See* Closing Memorandum of Defendant Jones, dated February 8, 1997 ("I am not suggesting that Jayson Jones did not validate any of the details contained in [the statements]").

One last issue bears mentioning. Defendant Jones also moved to suppress the supporting deposition of Investigator Grande because the deposition referenced Jones' statements. *See* Gov't Supp. exh. "3." During the suppression hearing, however, the

government stated that it had no intention of ever offering Investigator Grande's supporting deposition at trial. Supp.Tr. at 44. Therefore, while the court declines to suppress the supporting deposition on the grounds advanced by Jones, it will address the issue of its admissibility during trial should the government change its position at that time.[10]

Accordingly, the court denies defendant Jones' motion to suppress his statements because it finds Jones made a knowing and intelligent waiver of his *Miranda* rights prior to giving the statements.

### 6. *Suppression of Audiotapes or Audibility Hearing*

 Defendants Cesar A. Todd–Murgas, Ruben A. Todd–Murgas, Gilberto Arce, Jayson Jones, and Tricia Irving move to suppress certain tape recordings, or, in the alternative, for an audibility hearing. Tape recordings generally are admissible upon a showing of authenticity, accuracy, and relevance. *See United States v. Ruggiero,* 928 F.2d 1289, 1303 (2d Cir.1991); *United States v. Fuentes,* 563 F.2d 527, 532 (2d Cir.1977). A recording that is partially inaudible is generally admissible unless the portion that is unintelligible is so substantial that it renders the entire tape recording unreliable. *See United States v. Arango–Correa,* 851 F.2d 54, 58 (2d Cir.1988).

Prior to oral argument, the government consented to the requested audibility hearing. Gov't Response at 24. During oral argument, the court granted defendants' motions and suggested that the government and defendants review the tapes and submit to the court only those portions that the parties are not in agreement as to audibility. To date, however, the parties have not submitted any portions of unintelligible tape recordings. The court remains prepared to review any such recordings in the event the parties

---

**10.** During the suppression hearing, defendant Jones objected to the introduction of Grande's supporting deposition on the grounds that it was irrelevant and contained "statements that were recollected some six days later which have no notes, no support." Supp.Tr. at 47. The court received the deposition over defendant's objection and informed defendant that it would advise

him of the weight the court afforded it in this opinion. Supp.Tr. at 47. While the court considered the supporting deposition under the totality of the circumstances as some evidence of Jones' ability to relate the events in which he participated, the weight the court afforded the deposition was de minimis.

wish to submit them to the court. Therefore, the court denies defendants' motions to suppress the audiotape recordings, without prejudice.

### 7. Motion to Strike Alias

 Ruben A. Todd–Murgas moves to strike the alias contained in the indictment. Although the indictment does not contain an alias for Ruben Todd–Murgas, a defendant may legitimately complain that he may be prejudiced by the aliases of his codefendants if the indictment containing such aliases is presented to the jury. *See United States v. Hargrett,* 1996 WL 551090, at *10 (citing *United States v. Monroe,* 164 F.2d 471, 476 (2d Cir.1947)).

 Generally, however, aliases are stricken only if they constitute prejudicial surplusage and will not assist the trier of fact in identifying a particular defendant or defendants. *See, e.g., United States v. Miller,* 381 F.2d 529, 536 (2d Cir.1967) (use of aliases permitted where relevant to anticipated proof at trial); *see United States v. Clark,* 541 F.2d 1016, 1018 (4th Cir.1976) (inclusion of alias permissible where it is necessary to identify the defendant in connection with the acts charged in the indictment). Here, the aliases contained in the indictment may well assist the trier of fact in identifying particular defendants, especially because many of the tape recordings of phone conversations refer to the defendants by such aliases. *See United States v. Ruggiero,* 824 F.Supp. 379, 397–398 (S.D.N.Y.1993), *aff'd sub nom, United States v. Aulicino* 44 F.3d 1102 (2d Cir. 1995). Defendant's argument that the aliases contained in the indictment serve no useful purpose is unavailing. Accordingly, the defendant's motion to strike the aliases from the indictment is denied.

### 8. Motion for Additional Peremptory Challenges

Defendants Ruben A. Todd–Murgas, Vincente Rogers, and Tricia Irving move for additional peremptory challenges for voir dire as well as the opportunity to exercise such challenges separately from codefendants. As is its usual practice, the court will reserve on this decision until the time of the

conference preceding jury selection. *See United States v. Walker,* 922 F.Supp. at 743.

### 9. Motion for Severance

Defendants Cesar Todd–Murgas, Ruben A. Todd–Murgas, Jayson Jones, Vincente Rogers, and Tricia Irving move to sever their trials from their codefendants pursuant to Federal Rule of Criminal Procedure 14 on a variety of grounds. The court will address each *seriatim.*

 Rule 8(b) permits joinder of multiple defendants when they have participated in the same act or transaction or in a series of related acts or transactions which are part of a common scheme or plan. Fed.R.Crim.P. 8(b); *United States v. Bernstein,* 533 F.2d 775, 789 (2d Cir.1976). When defendants' activities are part of a series of acts or transactions which make up the underlying offenses, it is not necessary that each defendant be charged in each count. *See United States v. Cardascia,* 951 F.2d 474, 482–83 (2d Cir.1991). The government is not required to prove that each defendant participated in every act or transaction in the series of events comprising the scheme. *See id.*

 Courts in this circuit have stressed "the policy favoring joinder of trials, especially where the underlying crime involves a common plan or scheme and defendants have been jointly indicted." *Id.* at 482; *see United States v. Matos–Peralta,* 691 F.Supp. 780, 789 (S.D.N.Y.1988). The "slight prejudice" resulting from a joint trial is deemed outweighed by the judicial economies resulting from avoidance of duplicative trials as well as the avoidance of inconsistent verdicts. *See Cardascia,* 951 F.2d at 482–83 (citing *Richardson v. Marsh,* 481 U.S. 200, 209–10, 107 S.Ct. 1702, 1708–09, 95 L.Ed.2d 176 (1987)). Thus, a defendant seeking severance bears a heavy burden. *See Matos–Peralta,* 691 F.Supp. at 789. To meet that burden, a defendant must show that he will be so severely prejudiced by a joint trial that he will be denied his right to a fair trial if tried in the same proceeding as his codefendants. *Cf. United States v. Minicone,* 960 F.2d 1099, 1110 (2d Cir.1992). This burden is not met by merely showing a defendant's chances of

acquittal would be improved by a separate trial. *See United States v. Scarpa*, 913 F.2d 993, 1015 (2d Cir.1990).

 Defendant Cesar Todd–Murgas argues that he is only named in two counts of the indictment and would therefore be prejudiced if tried with his codefendants. It is well established, however, that a separate trial is not required simply because one defendant's role in a conspiracy is allegedly less significant or peripheral compared to other conspirators. *United States v. Torres*, 901 F.2d 205, 230 (2d Cir.1990).

 Defendant Jayson Jones argues that because of his mental deficiencies, his culpability may not be given the thorough attention necessary to provide him with a fair trial. *See* Jones' Mem. at 16. The court fails to see how a defense of diminished capacity would entitle this defendant to any special consideration regarding severance. Defendant Jones will be given ample opportunity to present his defense to the jury. The defense presented on behalf of Jones would be no different if Jones was tried collectively with codefendants or if he was tried individually. Therefore, this argument is insufficient to justify a severance. *See generally Scarpa*, 913 F.2d at 993.

 Defendant Cesar Todd–Murgas, Jayson Jones, and Vincente Rogers complain about the likelihood that some of the evidence offered against codefendants may be inadmissible against them individually and this would be unduly prejudicial. The mere circumstance that some evidence is admissible against one defendant but not others in a joint trial does not usually constitute prejudice warranting severance. *United States v. Losada*, 674 F.2d 167, 171 (2d Cir.1982); *United States v. Ramirez*, 602 F.Supp. 783, 787 (S.D.N.Y.1985). In any event, where evidence is relevant to the guilt of a single

codefendant, a limiting instruction is sufficient to cure any prejudice. *See United States v. Alvarado*, 882 F.2d 645, 655–56 (2d Cir.1989).

Accordingly, the court denies defendants' motions to sever.[11]

### 10. *Notice of Insanity Defense*

Defendants Cesar Todd–Murgas, Ruben Todd–Murgas, and Jayson Jones move, pursuant to Fed.R.Crim.P. 12.2(a) and (b), for an order placing the government on notice that they may offer the defense of insanity at trial, or offer expert testimony relating to a mental disease or defect for the purpose of disproving guilt. This notice requires no action or decision of the court.

## B. DISCOVERY MOTIONS

### 1. *Rule 16 Discovery*

Defendants Luis Cordoba–Murgas, Cesar Todd–Murgas, Ruben Todd–Murgas, Jayson Jones and Vincente Rogers seek an order compelling discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure. In response, the government submits that it has fulfilled its discovery obligations under this rule. This assurance is sufficient in the usual case, and thus the court denies these motions without prejudice to renew in the event it appears to defendants that the government fails to comply with Rule 16 in some respect. *See Walker*, 922 F.Supp. at 746.

### 2. *Witness Lists*

 Defendants Ruben A. Todd–Murgas, Jayson Jones, Vincente Rogers, and Tricia Irving move for disclosure of the government's witness list prior to trial. Defendants must make a particularized showing of need and materiality before a court can order such disclosure. *See United States v. Bejasa*, 904

---

**11.** The court does offer a caveat to the government with respect to its ruling on this motion. If the government intends to offer any confession of a nontestifying codefendant that inculpates another defendant, it must be cautious not to violate such a defendant's rights under the Confrontation Clause of the Sixth Amendment. *See Bruton v. United States*, 391 U.S. 123, 126, 88 S.Ct. 1620, 1622, 20 L.Ed.2d 476 (1968); *see also Cruz v. New York*, 481 U.S. 186, 193, 107

S.Ct. 1714, 1719, 95 L.Ed.2d 162 (1987). The court suggests that to avoid any prejudice that would require a severance here, the government should redact the names of any codefendant contained in any confession offered into evidence against its maker in accordance with *United States v. Williams*, 936 F.2d 698, 700–01 (2d Cir.1991). *See also Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).

F.2d 137, 139–140 (2d Cir.1990); *United States v. Cannone*, 528 F.2d 296, 301 (2d Cir.1975). Because none of the defendants have made such a showing, it would be beyond the court's discretion to order such a disclosure. The government has indicated, however, that it intends to provide the names of prospective witnesses on the date jury selection commences. Gov't Response at 19. Accordingly, the court denies defendants' motions.

### 3. *Disclosure of Informant Identities*

■ Defendants Ruben Todd–Murgas, Jayson Jones, Vincente Rogers, and Tricia Irving move for compulsory disclosure of information concerning the identity and background of confidential informants. To encourage knowledgeable persons to communicate information about wrongdoing to the government, the law recognizes a privilege to withhold the identities and background of informants who are promised confidentiality. *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957). However, the privilege must yield if the disclosure of an informant's identity, or the content of his or her communication, is relevant and helpful to the defense of an accused or is essential to a fair determination of a case. *See United States v. Russotti*, 746 F.2d 945, 950 (2d Cir.1984). In deciding a motion to reveal an informant's identity, the court must balance the public's interest in protecting the flow of information regarding wrongdoing against a defendant's right to prepare his defense. *See Roviaro*, 353 U.S. at 60–61, 77 S.Ct. at 628.

■ A defendant is generally able to establish a right to disclosure "where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir.1988) (citations omitted) Thus, both participation by the informant in the offense and relevance of the information sought must be shown by a defendant seeking disclosure. *See id.* at 1073; *cf. United States v. Jimenez*, 789 F.2d 167, 170 (2d Cir.1986) (government not required to disclose informant, who was both participant

and witness, absent showing that the testimony would have been of value to defendant's case).

■ The government intends to call most of the informants to testify at trial. *See* Gov't Response at 15. With respect to these informants, several circuits have adopted the rule that pretrial disclosure of informants' identities is not necessary where they will testify at trial. *E.g., United States v. Perkins*, 994 F.2d 1184, 1190 (6th Cir.1993). That rule is gaining ground in this circuit. *See DiBlasio v. Keane*, 932 F.2d 1038, 1043 (2d Cir.1991); *United States v. Leonard*, 817 F.Supp. 286, 302 (E.D.N.Y.1992). This court agrees with these authorities, that when no more particularized need for disclosure is averred by defendants, the testimony of a confidential informant at trial obviates the need for pretrial disclosure. The Jencks Act, 18 U.S.C. § 3500, prescribes the time the government must provide relevant information about testifying witnesses. Under these circumstances, the Jencks Act provides sufficient protection for defendants. *See United States v. Valerio*, 737 F.Supp. 844, 846 (S.D.N.Y.1990).

■ With respect to any informants that will not testify at trial, the court must decide whether the identity of non-testifying confidential informants should be revealed. The court has reviewed the requests of the defendants and concludes that no defendant has demonstrated that the identities and background of confidential informants are relevant and helpful to their defense. Defendant Irving makes the only specific request asserting that "informant testimony, if there is any, would provide a critical link between charge and conviction in Irving's case" and would be critical "if the government intends to link Irving to this conspiracy." Defendant Irving's Memorandum of Law, dated August 29, 1996, Doc. 104, at 2. It is clear from this assertion that Irving only seeks disclosure of informants who will testify. Therefore, because defendants are not entitled to early disclosure of testifying informants, and because defendant Irving has not demonstrated a particularized need for disclosure on non-testifying informants, the court denies Irv-

ing's motion, as well as the motions of the other defendants.

### 4. *Disclosure of Coconspirators' Statements*

Defendants Cesar Todd–Murgas, Ruben Todd–Murgas, Jayson Jones, Vincente Rogers, and Tricia Irving move for disclosure of coconspirators' statements pursuant to Fed.R.Crim.P. 16(a)(1)(A). Rule 16 explicitly provides that statements made by the defendant himself are discoverable. The general rule is that Rule 16 does not encompass the statements made by alleged coconspirators. *See United States v. Percevault,* 490 F.2d 126, 130–131 (2d Cir.1974). Despite the general rule, however, this court has held that under a broad reading of Rule 16, statements of coconspirators made during the course of and in furtherance of a conspiracy that are attributable to a defendant are discoverable by that defendant. *See, e.g., United States v. Konefal,* 566 F.Supp. 698, 706–07 (N.D.N.Y.1983) (Munson, C.J.).

This court's holding in *Konefal* that coconspirators' statements are discoverable applies only where the government does not intend to call the coconspirators as witnesses at trial. *See id.* Where the government does intend to call such coconspirators as witnesses, the Jencks Act governs and expressly makes statements of government witnesses, including coconspirators, not discoverable until the witness testifies. *Id.*

Here, defendants request statements of their alleged coconspirators, all of whom are apparently named as defendants in the indictment. Following its previous holding in *Konefal,* the court finds that fairness and the interest of justice require the government to disclose the statements of alleged coconspirators who are named as defendants and who the government will not call as witnesses. Only such statements that are admissible under Fed.R.Evid. 801(d)(2)(E) need be cross-disclosed.

In its response, the government takes its usual shots at *Konefal.* The court has previously addressed such attacks. *See Walker,* 922 F.Supp. at 742–43. The government however has unsheathed a new bolt from its quiver: *In re United States,* 834 F.2d 283 (2d Cir.1987). The government's reliance on this case requires careful analysis. The court has consequently considered that authority—and now finds it inapposite.

To fully understand *In re United States,* the court must examine the district court opinion below which *In re United States* addresses and repudiates. *See United States v. Gallo,* 654 F.Supp. 463 (E.D.N.Y.1987). In addition, Federal Rule of Criminal Procedure 16(a)(1)(A) must be examined to determine which statements it applies to. After performing that analysis, it becomes evident that *In re United States* disagreed with the *Gallo* court's interpretation of Rule 16 and reversed its failure to apply the Jencks Act to protect the statements of prospective prosecution witnesses from pretestimony disclosure. It did not rebuff the rule in *Konefal.*

Rule 16(a)(1)(A) allows a defendant to discover before trial four types of statements:

(1) Written or recorded statements made by the defendant within the possession, custody or control of the government;

(2) The portion of any written record containing the substance of any oral statement made by defendant, before or after arrest, to a person the defendant then knows to be a government agent;

(3) The substance of any other statement made by the defendant, before or after arrest, to a person the defendant then knows to be a government agent, provided the government intends to use that statement at trial; and

(4) the defendant's grand jury testimony.

Fed.R.Crim.P. 16(a)(1)(A). *Gallo* was an organized crime RICO case. 654 F.Supp. at 465. The defendants moved for pretrial disclosure of all coconspirator statements which the government intended to offer pursuant to Federal Rule of Evidence 801(d)(2)(E). That rule classifies the declarations of coconspirators made "during the course and in furtherance of the conspiracy" as "not hearsay." Significantly for our purposes, the defendants primarily sought "to discover statements made by *unindicted* coconspirators,

many of whom are no longer alive." *Id.* (emphasis added).[12]

■ The *Gallo* court set forth the *Konefal* rule just as this court would have, and in fact cited *Konefal. Gallo*, 654 F.Supp. at 478. Coconspirator statements may be cross-disclosed if: the coconspirator declarant is not a prospective prosecution witness; if the statement was made in the course of and in furtherance of the conspiracy, i.e., if admissible under Fed.R.Evid. 801(d)(2)(E); and if the statement would be discoverable by the declarant himself under Fed. R.Crim.P. 16(a)(1)(A). *See id.* at 479. Fair enough. But the Second Circuit ruled that the district court erred by giving the first category of statements in Rule 16(a)(1)(A) an overbroad interpretation.

The trial court interpreted the first category of statements in Rule 16(a)(1)(A) as including "any statement of a defendant memorialized before trial which the government intends to use at trial." *Id.* at 471. A hypothetical demonstrates the broad sweep of this construction. A confidential informer could be party to a conversation wherein he hears an incriminating statement by a coconspirator. The informer later meets with an agent of the Federal Bureau of Investigation. The special agent takes notes while debriefing the confidential informer about the conversation. The agent's notes are reduced to a report of investigation. Alternatively, the agent tape-records the confidential informer's information, which is later transcribed, or the confidential informer testifies before the grand jury. The FBI agent could himself be the party to the conversation, in an undercover capacity. In any of these cases, the *Gallo* court would characterize a subsequent memorialization of the coconspirator's statement—whether rough notes, an investigative report, or grand jury testimony—as a written or recorded statement of the defendant within the first category of statements included in Rule 16(a)(1)(A). *See id.* at 467–71.

Most circuit courts of appeals, including the Second, have rejected this interpretation of Rule 16. *See United States v. Viserto*, 596 F.2d 531, 538 (2d Cir.1979) (plainclothes agent overhears conversation and later takes notes on scrap of newspaper); *see also United States v. Hoffman*, 794 F.2d 1429, 1432 & n. 4 (9th Cir.1986); *United States v. Malone*, 49 F.3d 393, 396 (8th Cir.1995) (Secret Service agent's interview notes with third person and e-mail message to prosecutor); *United States v. Cole*, 857 F.2d 971, 974–75 & n. 4 (4th Cir.1988) (oral admission to government witness; witness later reports it to government agent who takes notes (disclosure also prohibited by Jencks Act)); *United States v. McClure*, 734 F.2d 484, 492–93 (10th Cir. 1984) (statements to undercover officers); *United States v. Carter*, 621 F.2d 238, 240 (6th Cir.1980) (quoting *Viserto*, and also relying on Jencks Act). The accepted interpretation, as gleaned from these authorities, is "that to qualify as a written statement, the statement must have been written by a defendant or at the defendant's instigation." 25 Moore's Federal Practice ¶ 616.03[4][a] (3d ed.1997).

■ The *Gallo* court's interpretation of the first category of Rule 16(a)(1)(A) would render the second category—oral statements made to a then-known government officer—redundant and meaningless, thus violating a seminal canon of construction. *E.g., McClure*, 734 F.2d at 493 ("[T]o hold otherwise would render meaningless the distinction between oral and written statements under the rule."); *see Gustafson v. Alloyd Co.*, 513 U.S. 561, 574–75, 115 S.Ct. 1061, 1069, 131 L.Ed.2d 1 (1995) (avoid a reading which renders some words altogether redundant). Moreover, when an undercover government agent overhears an incriminating statement then later reduces it to a report, such report is not subject to discovery prior to that agent's testimony at trial under the Jencks Act. *See* discussion *infra.*

The government in *In re United States* sought the writ of mandamus from the Sec-

---

12. That many of the unindicted coconspirators were dead is no cause for distraction. The issue was not discussed in *Gallo* or *In re United States* and it can be assumed that the law pertaining to

unavailable witnesses governed the admissibility of prior statements or testimony. *See* Fed. R.Evid. 804; 5 Weinstein's Federal Evidence ch. 84 (2d ed.1997).

 on 1 Circuit to appeal the trial court's discovery order. 834 F.2d at 284. The panel ruled in favor of the government and adhered to the circuit's previous interpretation of Rule 16. *Id.* at 285; *see Viserto*, 596 F.2d at 538. That could have ended the matter, since under the definition in *Gallo*, as well as in *Konefal*, no statement which is not discoverable by the speaker himself pursuant to Rule 16 would be subject to cross-disclosure to coconspirator codefendants. But the appellate court went on to examine the propriety of cross-disclosing statements among coconspirators. To understand how the Second Circuit's opinion with regards to this issue is inapplicable to the case at bar, the court must focus on the narrow holding:

> [W]e hold that, as to the district court's order for the production of statements of *government witnesses*, the Jencks Act controlled, and the district court had no inherent power to modify or amend the provisions of that Act.

834 F.2d at 287 (emphasis added). This holding makes clear that whatever statements the district court was ordering to be cross-disclosed, they were the statements of government witnesses, not nontestifying coconspirator codefendants.

That conclusion is buttressed by the fact that in *Gallo* the defendants were primarily moving to discover the statements of *unindicted* coconspirators, many of whom presumably were testifying on behalf of the government. The *Gallo* case is thus distinguishable for the same reason this court has distinguished *Percevault*, 490 F.2d 126, in the past:

> In the case at bar, defendants have requested statements of their codefendants, all of whom are coconspirators. Thus the Government will not be calling any of them as witnesses at trial, and strict adherence to the rule in *Percevault* is not required.

*Konefal*, 566 F.Supp. at 706. As in *Konefal*, this court only requires in the matter sub judice that qualifying statements of indicted coconspirators who are not currently cooperating with the government pursuant to negotiated plea agreements be cross-disclosed.

The *Gallo* court recognized that the Jencks Act forbade the cross-disclosure of statements of coconspirator codefendants who were going to cooperate with the government and testify against their confreres at trial. But the circuit court characterized this as a "limited concession at best," since the district court's order, supported by its reading of Rule 16, allowed the cross-disclosure of what were essentially the statements of undercover agents and confidential informers. The agents and informers were prospective government witnesses and their statements were protected from pretestimony disclosure by the Jencks Act, even when such statements contained the substance of defendants' prior incriminating declarations. *See In re United States*, 834 F.2d at 286. This court adheres to the Jencks Act. *E.g.*, *Walker*, 922 F.Supp. at 743. However, as so aptly stated by the *Gallo* court, "[t]he government is encouraged, but not required, to disclose any statements made by co-conspirators who are prospective witnesses," at least a reasonable time before trial. 654 F.Supp. at 480.

The Jencks Act has no application to the statements of those other than actual or prospective government witnesses. It does not expressly prohibit the pretrial cross-disclosure of nonwitness coconspirator codefendant statements. Indeed, that particular issue could not have even been before the Second Circuit in *In re United States*. In *Gallo* the government had already "disclosed all coconspirator statements that would be discoverable under Rule 16(a)(1)(A) were they the defendants' own statements." 654 F.Supp. at 467. That is all *Konefal* requires. The only objections the government had in *Gallo*, and hence all that was appealed to the circuit court, were statements not covered by Rule 16 and protected by the Jencks Act from pretestimony disclosure.

Admittedly, the panel's expressed concerns about the safety of coconspirators would support a broader prohibition. *See generally* 834 F.2d at 287. In response, this court observes that Circuit Judge Van Graafeiland was addressing the safety of coconspirators who were government witnesses. But assuming that even nonwitness coconspirator codefendants may be exposed to danger if their statements are revealed to other al-

leged coconspirators, there is no evidence of such a risk in the instant matter. The guilty pleas entered thus far pursuant to negotiated agreements are a matter of public record. Most of the defendants in this case are detained pending trial. If in the future the government has more concrete concerns that cross-disclosure may put a defendant, conspirator, or witness in jeopardy, they should disclose those concerns to the court. The rule in *Konefal* is not carved in stone. *See* 566 F.Supp. at 706–07 (the court may decline to permit disclosure in other circumstances). And this court is not insensitive to such legitimate concerns.

The court therefore grants defendants' motions for discovery of coconspirators' statements. The government is directed to disclose to each defendant all the statements in its possession made during the course and in furtherance of the conspiracy by those defendants the government does not intend to call as witnesses at the trial of this prosecution.

### 5. *Transcripts of Prior Proceedings*

Defendants Cesar Todd–Murgas and Ruben Todd–Murgas have requested transcripts of related prior proceedings. The court is unaware of any pretrial proceeding before this court, or before the magistrate judge, which bears significantly on any of the issues for trial. The hearings before the magistrate are generally tape-recorded and copies are available from the clerk of the court for a fee of $15.00 per proceeding. With respect to transcripts, if a defendant desires one of a particular state or federal proceeding, he may apply to the court for funds to obtain it from the court reporters, in accordance with the Criminal Justice Act, 18 U.S.C. § 3006A, and applicable orders and rules of this court and circuit. Therefore, the court denies defendants' motions without prejudice because there is no need for the court's intervention.

### 6. *Disclosure of Electronic Surveillance*

Defendants Luis Cordoba–Murgas, Cesar Todd–Murgas, and Ruben Todd–Murgas move for disclosure of all electronic surveillance evidence.

The government avers that it has complied with the requirements of 18 U.S.C. § 3504 and Rule 16 in all respects. The government responds that it has provided the orders authorizing the interception of electronic communications, the accompanying applications and affidavits, and other documents relating to electronic surveillance to the defendants. Gov't Response at 19–20. The government also responds that it provided audiotapes of intercepted conversations to the defendants. *Id.* Therefore, the court denies these motions.

### 7. *Demand for Brady and Giglio Material*

Defendants move for an order compelling the production of *Brady* material. Under the rule defined in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the government is required to provide a defendant with exculpatory or mitigating evidence in its possession. The government responds to defendants' motions that it is fully aware of its obligations under *Brady* and has acknowledged its continuing duty to comply with *Brady.* Gov't Response at 9. In accordance with its traditional practice, the court accepts the government's affirmation that it will abide by *Brady.* In addition, as the court is sure the government is aware, the government should disclose all *Brady* material as soon as it learns of its existence.

Defendants additionally move for an order compelling the disclosure of witness impeachment materials, discoverable by the rule in *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). While defendants have requested immediate disclosure of such material, *Giglio* material is akin to Jencks Act material, and therefore, need not be disclosed until the witness testifies. *See, e.g., U.S. ex rel. Lucas v. Regan,* 503 F.2d 1, 3 n. 1 (2d Cir.1974).

This notwithstanding, the government has indicated that it is receptive to requests from defendants for disclosure of *Giglio* material a reasonable time before a witness' testimony, possibly at the time of jury selection. In the event the government does not disclose *Giglio* material until after the witness testifies, and if such material

turns out to be unusually complex, a short continuance in most cases may be granted to cure any prejudice.

■ The government raises its concerns about the possibility of disclosing law enforcement personnel files as *Giglio* material. Such personnel files, which may contain sensitive information, are nonetheless discoverable if they contain information tending to impeach the agent's or officer's testimony. *See United States v. Kiszewski,* 877 F.2d 210, 215–16 (2d Cir.1989). Disciplinary notices or official admonitions for misconduct in a personnel file may be *Giglio* material, and the prudent course for the government is to either turn the relevant information over to the defense, or if there exists a doubt, to the court for *in camera* inspection.

Based on the government's averments, the court denies without prejudice the motions for disclosure of *Brady* exculpatory material. The court denies the motions for production of *Giglio* impeachment evidence—subject to renewal at the appropriate time.

### 8. *Identification Evidence*

Defendants Vincente Rogers and Tricia Irving seek disclosure of identification evidence. The government responds that it possesses or has access to photographs of the defendants and that the defendants are welcome to view the photographs of defendants, as well as photographs of locations and evidence, at a mutually convenient time. Therefore, the court denies defendants' motions.

### 9. *Jencks Act Material*

Defendants request an order directing the government to produce witness statements and reports in a timely fashion pursuant to the Jencks Act, 18 U.S.C. § 3500. The Jencks Act provides that no statements by a government witness shall be the subject of discovery or inspection until such witness has testified on direct examination at trial. The government has agreed to provide Jencks Act material to the defendants at the commencement of jury selection, despite the fact that the court is without authority to order production of witness statements before they

have testified. *See United States v. Percevault,* 490 F.2d 126, 129 (2d Cir.1974). Accordingly, the court denies defendants' motions.

### 10. *Dismissal of Indictment and Inspection of Minutes*

■ Defendant Tricia Irving moves for dismissal of the indictment on the grounds that the evidence presented to the grand jury was not legally sufficient. An indictment that is valid on its face is not subject to challenges on the ground that it was based on inadequate of incomplete evidence. *See United States v. Calandra,* 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974); *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956). An indictment is sufficient when it contains the elements of an offense, notice to the defendant of the charges he must be prepared to meet, and information sufficient to protect the defendant from the risk of double jeopardy. *See United States v. Bailey,* 444 U.S. 394, 414, 100 S.Ct. 624, 636–37, 62 L.Ed.2d 575 (1980); *United States v. Covino,* 837 F.2d 65, 69 (2d Cir.1988) In the instant case, defendant argues that the evidence was insufficient to warrant the indictment. Such a broad argument is inadequate to justify dismissal of the indictment, and the motion to dismiss is therefore denied.

■ Defendants Luis Cordoba–Murgas and Tricia Irving move for disclosure of grand jury transcripts. Defendants fail to demonstrate the particularized need required to prevail on such a motion. *See Dennis v. United States,* 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973 (1966). The unsubstantiated assertions that the transcripts will reveal the insufficiency of evidence to warrant the indictment fail to meet this threshold. Accordingly, the court denies the motions for disclosure of grand jury transcripts.

### 11. *Federal Rules of Evidence 404(B)*

Defendants Cesar Todd–Murgas, Ruben Todd–Murgas, Jayson Jones and Vincente Rogers move for disclosure of other crimes, wrongs, or bad acts the government intends to proffer against them that would be admis-

sible under Rule 404(b) of the Federal Rules of Evidence.

The government has agreed to disclose extrinsic act evidence, and presumably already has. *See* Gov't Response at 16. The court thus denies defendants' 404(b) motions.

### 12. *Federal Rules of Evidence 609*

■ Defendants Cesar Todd–Murgas, Ruben Todd–Murgas, and Jayson Jones move for disclosure of their criminal histories. The government responds that the parties have been provided with copies of their criminal histories. *See* Gov't Response at 16. Whether or not any specific conviction is admissible for impeachment purposes is an evidentiary issue which must await determination at trial. *See Luce v. United States,* 469 U.S. 38, 41, 105 S.Ct. 460, 463, 83 L.Ed.2d 443 (1984). At this stage, it is not known whether defendants here will take the stand and therefore, any determination is premature.

Rule 609(b) does, however, requires that the government give advance written notice of its intent to impeach defendant testimony with convictions obtained more than ten years ago. The court grants the motions with regard to such 609(b) convictions, and denies without prejudice to renew at trial with respect to more recent convictions.

### 13. *Notice of Intent to Use Evidence*

Defendants Cesar Todd–Murgas and Ruben Todd–Murgas move pursuant to Fed. R.Crim.P. 12(d)(2) for the government to disclose all the evidence discoverable by defendants under Rule 16 that it intends to introduce at trial. The government presumably has already done so. The court denies these motions without prejudice to renew.

### 14. *Further Relief and Further Motions*

Defendants request leave to present new motions if required. The court grants this motion upon a showing of just cause by any one of the defendants. Defendants also move for further relief as the court deems appropriate. The court, perceiving no need for further relief at this juncture, denies the motions.

## III. CONCLUSION

To recapitulate, the court GRANTS defendants' motions for a bill of particulars to the following extent. The government must disclose the identities of all persons the government claims to have been coconspirators during the course of the alleged conspiracy, regardless of whether they have been indicted. The government is further directed to disclose whether any such coconspirator is in federal, state, or protective custody. Additionally, the government should disclose the amount of controlled substance it will seek to attribute to defendant Tricia Irving at trial as well as the amount of money exchanged for the given amount of controlled substance.

The court DENIES defendants' motions for a pre-trial hearing on the admissibility of coconspirators statements—also referred to as a *James* hearing. The court DENIES defendant Vincente Rogers' motion for suppression of wiretap evidence. The court DENIES defendant Vincente Rogers' motion for suppression of physical evidence obtained during the execution of the search warrant. The court DENIES defendant Jayson Jones' motion for suppression of his oral and written statements. The court DENIES defendants' motions for suppression of audiotapes, without prejudice, and GRANTS defendants motions for an audibility hearing. The court DENIES defendant's motion to strike the aliases contained in the indictment. The court RESERVES until the final pre-trial conference the defendants' motions for additional peremptory challenges. The court DENIES defendants' motions for severance.

The court DENIES without prejudice defendants' motions compelling discovery pursuant to Fed.R.Crim.P. 16. The court DENIES defendants' motions for disclosure of the governments' witness list prior to trial. The court DENIES defendants' motions for compulsory disclosure of information concerning confidential informants. The court GRANTS defendants' motions for discovery of coconspirators' statements, and the government must disclose to each defendant all the statements in its possession made during the course and in furtherance of the conspiracy by those defendants the government

does not intend to call as witnesses at trial. The court DENIES without prejudice defendants' motions for transcripts of prior proceedings. The court DENIES defendants' motions for disclosure of electronic surveillance, without prejudice, as the government responds it has complied with such requests. The court DENIES Defendants' motions for exculpatory evidence without prejudice should another motion become necessary. The court DENIES defendants' motions for witness impeachment material, without prejudice to renew at the appropriate time. The court DENIES defendants' motions for identification evidence because the government has agreed to make such evidence available to defendants. The court DENIES defendants' motions for early disclosure of Jencks Act material. The court DENIES defendants' motions for inspection of grand jury minutes and defendant's motion for dismissal of the indictment. The court DENIES defendants' motions for disclosure of other crimes, wrongs, or bad acts pursuant to Rule 404 because the government has agreed to disclose such information. The court GRANTS defendants' motions for disclosure of their criminal histories pursuant to Rule 609 with respect to convictions more than ten years old and DENIES the motions without prejudice for convictions more recent than 10 years. The court DENIES without prejudice defendants' motions for disclosure of all evidence discoverable pursuant to Fed. R.Crim.P. 12(d)(2). The court DENIES without prejudice defendants' motions for further relief as the court deems appropriate because the court perceives no need for further relief at this juncture. The court GRANTS defendants' motions to join in the motions of the other defendants, and all rulings set forth in this decision will apply to those defendants who joined in the motions of codefendants. The court GRANTS defendants' motions for leave to file additional motions, upon a showing of good cause. Lastly, the court DENIES all matters not specifically referred to herein.

The final pre-trial conference in this matter is scheduled for May 13, 1997, at ten o'clock in the morning at the United States Courthouse in Syracuse, New York. Voir dire shall commence on May 14, 1997, at ten o'clock in the morning.

IT IS SO ORDERED.